755 A.2d 1229 (2000)
333 N.J. Super. 464
Patricia LINEK, Plaintiff-Respondent,
v.
John KORBEIL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 2000.
Decided August 3, 2000.
*1230 Jeffrey D. Curzi, Clinton, argued the cause for defendant-appellant (Morrow & Curzi, attorneys; Sieglinde K. Rath, on the brief).
Benjamin Luke Serra, Somerville, argued the cause for plaintiff-respondent.
Before Judges STERN, KESTIN and STEINBERG.
The opinion of the court was delivered by KESTIN, J.A.D.
Defendant appeals from the trial court's order clarifying and modifying the provision in the parties' 1981 judgment of divorce which purported to distribute defendant's pension equitably. We affirm.
Judge O'Donnell, who tried the contested issues at the time of the divorce, including those relating to equitable distribution, expressed his findings and conclusions in letter opinions dated May 4 and May 26, 1981. In making his equitable distribution determination regarding the pension, the judge expressly relied on Kikkert v. Kikkert, 177 N.J.Super. 471, 427 A.2d 76 (App. Div.), aff'd, 88 N.J. 4, 438 A.2d 317 (1981), and determined that that asset of the sixteen-year marriage should be distributed equally. After applying the coverture fraction, the judge calculated the marital value of the pension at the time the complaint was filed at $433.63 per month and, assuming defendant's retirement at age sixty-five, the judge made the following award in the June 30, 1981 judgment of divorce:
[U]pon defendant attaining the age of 65 years, plaintiff shall be awarded one-half of defendant's pension, at its value on August 1, 1979 in the amount of $433.63, or $216.82 per month[.]
In 1987, after qualified domestic relations orders (QDROs) were authorized by federal statute, a consent order was entered to satisfy the requirements of the pension administrator. The order provided, inter alia, that plaintiff was:
to begin receiving payments in the amount of $216.62 [sic] per month at the time the participant [defendant] reaches the age of 65 years....
Defendant, however, retired on January 14, 1996, at the age of fifty-six and began collecting his pension. By letter dated February 8, 1996, the pension administrator advised plaintiff of that fact and proposed to begin immediate payment to her of the dollar share fixed in the QDRO, $216.62 per month. On February 26, the pension administrator's position had changed to one of strict compliance with the terms of the order:
[Y]ou will commence your portion of the pension benefit payment of $216.62 ... when Mr. John Korbeil reaches age 65.
After commencement, your pension payments will be made over Mr. Korbeil's lifetime. If Mr. Korbeil predeceases you before you commence your benefit, no payments will be made to you.
In September 1996, plaintiff filed a post-judgment motion seeking immediate payment of her share of defendant's pension and requiring defendant to pay plaintiff arrears that had accrued since defendant started receiving the pension. Defendant opposed the motion, claiming that, because he had retired early, plaintiff was not entitled to the full amount set forth in the judgment of divorce.
On October 21, 1996, Judge Herr ordered the parties to "retain an actuary to calculate the marital value of Defendant's AT & T pension pursuant to the Final Judgment of Divorce dated June 30, 1981, and the amount that would be distributed to plaintiff if one-half that value were paid *1231 to her monthly beginning on January 13, 1996, defendant's retirement date."
In December 1997, plaintiff filed another motion seeking arrears and an order compelling payment of $216.41 [sic] per month from defendant's pension. Defendant presented the court with a report from actuary Otis Ray, which said plaintiff was entitled to a monthly pension of $93.23. However, the Ray calculation was made on the erroneous assumption that the payment at issue was on a deferred vested pension and not a service pension.
Judge Bernhard recognized this error when he ruled in a January 23, 1998 proceeding: "[T]here's no question that Mr. Ray's computations are in error ... they don't deal with the computation of [this] service pension and he gives you several indications that his computations don't apply if we're talking about a service pension[.]" Judge Bernhard denied plaintiff's motion without prejudice, however, on the basis that "no one has really complied with... the order of the 21st of October 1996[,]" and because the information which had been supplied by both parties was not sufficient upon which to base a decision.
In May 1998, plaintiff again filed a motion seeking monthly payment of her share of the pension, arrears and counsel fees. Defendant filed a cross-motion seeking denial of plaintiff's motion, imposition of monetary sanctions against plaintiff and her attorney for "intentionally violating" Judge Herr's October 21, 1996 order, and an award of counsel fees. Defendant presented another actuary's report, from Charles Stipelman, which found that "the value of [the interest provided in the judgment of divorce as of August 1, 1979] adjusted to the earlier payment commencement date" for defendant came to $115.71 per month for plaintiff. Judge Bernhard reviewed Stipelman's report and stated as part of his June 19, 1998 oral disposition:
Plaintiff continues to erroneously assert that her share of defendant's pension at the present time is $216.82 despite the fact that defendant retired at 56 years, three months and not 65. The $216.82 is the appropriate pension benefit she is entitled to receive when the defendant reaches 65 years of age. If she were entitled to receive a portion of defendant's present pension as retirement date of January 13, 1996, it would not be $216.82 as the actuarial fund would not have received an amount to pay that sum. The appropriate sum, if the plaintiff was to receive benefits based upon defendant's retirement at age 56 years, three months is $115.71.... Thus, the plaintiff's application for the defendant to make payments [is] misplaced. Therefore, the relief she request[s] is inappropriate and is denied. This Court assumes that the next application will be payment for a sum of money from defendant's actual retirement date of January 13th, 1996. Plaintiff ... would be entitled to receive her share of the pension benefit either when he reaches 65 or some earlier date. In other words, the question I cannot answer, will AT & T pay plaintiff $115.71 now and into the future? That's not a question before me.
The judge recognized, however, that "she's probably entitled to something more than $115 if it starts now as opposed to the date of retirement," and he told the parties, "[t]hat's a determination you have to get from AT & T." The judge entered an order on the same day denying all relief requested by both parties.
Plaintiff's appeal from that order was eventually dismissed, after a Civil Appeals Settlement Program conference, in an order noting that the matter had been settled. Judge Herr in her later bench opinion determined that plaintiff had "voluntarily[ ] dismissed her appeal with the understanding that the trial court should properly address the pension issue" based upon a new actuarial analysis from William Troyan, Inc. prepared at plaintiff's behest, as well as the Stipelman report.
*1232 Following the dismissal of the appeal, plaintiff filed another post-judgment motion seeking the entry of a "correct and accurate" QDRO, i.e., in the amount of $692.18 per month as calculated in the Troyan report, and counsel fees. Defendant filed a cross-motion seeking denial of plaintiff's motion and counsel fees.
On February 5, 1999, Judge Herr heard oral argument and rendered an oral decision. She observed therein:
Instead of reflecting that plaintiff was entitled to 50 percent of the coverture fraction of defendant's pension, as required by Kikkert, the [1987] order reflected that she was to begin receiving payments of $216.62 per month when defendant reached age 65 with such payments to cease upon the death of either party.[] Of course, that comment ... "Payments to cease upon the death of either party" was also not part of any previous judgment of divorce or part of the opinion of Judge O'Donnell.
* * *
The basis of that decision, as I've already noted, was the language used by Judge O'Donnell on May 26 [, 1981], wherein he ruled that plaintiff was entitled to one half defendant's pension accrued during the marriage in accordance with Kikkert v. Kikkert, 177 N.J.Super. 471, 427 A.2d 76. Of course, Kikkert directed that if the present value of a pension could not be distributed to the non-employed spouse in the form of other available marital assets at the time of a divorce, the trial court should resort to "a form of deferred distribution based upon fixed percentages." [Id. at 478, 427 A.2d 76.]
[Plaintiff's 1997 motion] was denied... without prejudice to allow her get [the necessary] actuarial report. And the ... order of June 19th, 1998 [denied the relief she sought] specifically on the grounds that she failed to provide a proper actuarial analysis using the Kikkert formula.
* * *
Neither of [the] values [contained in the Stipleman or Ray reports] were adopted by Judge Bernhard and plaintiff appealed the June 19th, 1998 ruling that she failed to provide a proper actuarial analysis using the Kikkert formula. She then, voluntarily, dismissed her appeal with the understanding that the trial court should properly address the pension issue. Plaintiff now submits an actuarial analysis from William Troyan Incorporated, which has valued plaintiff's one half share of the marital portion of defendant's monthly retirement benefit. That amount is $692.18. Obviously, this figure is significantly greater than the $216.82 per month value established at the time of divorce.
Years of experience with QDRO have passed since ... Kikkert and also ... Judge O'Donnell's imperfect implementation of Kikkert. While use of a present dollar amount, and the use of a percentage in his ... order and his decisions are confusing, Judge O'Donnell's decision did provide for a method of distribution that was not as a practical matter even available until the enactment of the 1984 Retirement Equity Act.
Thereafter, a court was able to assign a pension of an employed spouse to the non-employed spouse. Over the years, confusion was created by the dual use of conflicting terms. That is the set dollar figure used by Judge O'Donnell as well as the 50 percent of the coverture fraction also used by Judge O'Donnell[,] which percent of coverture fraction was clearly the appropriate language under his cited authority, that is, Kikkert.

Mr. Troyan explains, in his report, that putting a dollar figure on the pension at the time of the divorce was not consistent with Kikkert. He said, "The dollar figure would have been applicable to the immediate offset evaluation method, *1233 but not the deferred distribution method," which Kikkert said ... was to be distributed by use of percentages.
Defendant says that a re-determination of the value of the pension is precluded by the doctrine [of] res judicata and collateral estoppel since the amount of the pension to be paid has been finally determined. And the only issue that is now open is how those payments are to be allocated in light of defendant's early retirement.
Plaintiff, on the other hand, argues that those doctrines do not apply since the confusion and the use of the dollar amount and percentages requires equity to correct the confusion. Clearly, the intent of Judge O'Donnell was to apply Kikkert. There's no doubt what Kikkert requires and plaintiff should receive the full share she's entitled to under the law. That share is 50 percent of the marital percent of the pension.
Mr. Troyan has made that calculation and I shall permit him to prepare the necessary forms of orders and I shall sign the orders consistent with his determination. Both parties' request[s] for counsel fees are denied.
Judge Herr's resulting order, from which defendant appeals, provides, in major part:
1. ORDERED, that the parties cooperate as necessary for Troyan Assoc. to prepare and furnish the Court and counsel with Qualified Domestic Relations Order or orders in accordance with the October 13, 1998 pension evaluation prepared by William Troyan Associates and to enable plaintiff to receive her benefits accrued since 1-13-96.
2. FURTHER ORDERED, that Plaintiff shall escrow all funds received with her attorney except for $200.00 per month provided defendant has timely filed an appeal and diligently pursues the appeal.
On appeal, defendant contends that plaintiff was barred from the pension distribution relief which she had sought and which the trial court ordered because plaintiff had made no timely filing of either an appeal from the judgment of divorce, or a motion for a new trial, or a motion pursuant to R. 4:50-1. Defendant also asserts that the "`law of the case' [rule], collateral estoppel, and res judicata bar relitigation of the amount of [the] pension benefit awarded to plaintiff in the judgment of divorce[,]" that "the doctrines of laches and equitable estoppel bar reconsideration of the judgment of divorce," and that the "time of decision" rule was also violated. Finally, defendant argues that Judge Bernhard's June 19, 1998 ruling was correct, i.e., that plaintiff was entitled to a reduced monthly benefit over that provided in the judgment of divorce by reason of defendant's early retirement, and that relitigation of that question is barred by operation of res judicata and collateral estoppel.
In addition to oppugning defendant's arguments, plaintiff also contends that she was entitled to the award of counsel fees which Judge Herr denied. The latter issue will not be considered in the light of plaintiff's failure to file a notice of appeal or cross-appeal from that portion of the trial court's order which denied her application for counsel fees. See Sikes v. Township of Rockaway, 269 N.J.Super. 463, 465-66, 635 A.2d 1004 (App.Div.), aff'd, 138 N.J. 41, 648 A.2d 482 (1994).
Judge Herr was manifestly correct in her understanding of Kikkert, and how it applies to this case. She was also correct in her evaluation of Judge O'Donnell's laudable but imperfect effort to apply the standards of that then-recently-decided case to the instant matter. None of defendant's arguments suggest the contrary.
Defendant also does not dispute the correctness of the Troyan report. That report posits a pension value at the time of defendant's retirement far in excess of the valuation proffered at the time of the divorce trial, to which no objection was registered at the time. The trial court came *1234 to rely upon the valuation then before it in framing its judgment-of-divorce determination distributing the pension, a provision which was improperly specific in establishing a dollar amount to be paid to plaintiff at some future date. It is of no consequence whether the valuation disparity which eventually became evident came about because an error was made in the pension valuation submitted to the court at the time of the divorce trial, or whether it was the result of market forces that produced extraordinary growth in the value of the pension asset in the interim, a factor that obviously could not have been predicted at the time of trial.
Defendant, rather, raises procedural-type bars to consideration of the pension's real value at the time Judge Herr made her determination. We reject the arguments advanced as misapplied, both because they elevate form over substance and because they propose an inequitable result in an area of the law that is preeminently one of equitable applications and objectives.
When Judge O'Donnell engaged in his effort to apply Kikkert's standards governing deferred distribution of an interest in a pension asset, he created an ambiguity in the judgment of divorce by defining plaintiff's interest as a fixed amount. Although the then-present value of the pension, and plaintiff's percentage share of that asset at the time by application of the coverture fraction, could well have been correctly determined, there was no way the judge or anyone else could have known what the value of the pension, and therefore plaintiff's fractional interest, was to be some years in the future, whether defendant retired at age sixty-five as then anticipated or came to opt for an earlier retirement, as he actually did.
The problem created could have been avoided by a buy-out, at the time, of plaintiff's interest in the pension for the then-present value of her share. But, as in many such situations, sufficient assets with which to effect a buy-out were not available as a practical matter. See, e.g., Kikkert, supra, 177 N.J.Super. at 477-78, 427 A.2d 76. If a buy-out could have been accomplished, plaintiff would have had the opportunity to profit from the growth over the years of the assets received, much as she is entitled to the benefit of passive growth factors affecting the pension as a whole and her undistributed interest in it. See Risoldi v. Risoldi, 320 N.J.Super. 524, 540-41, 727 A.2d 1038 (App.Div.), certif. denied, 161 N.J. 335, 736 A.2d 528 (1999); Reinbold v. Reinbold, 311 N.J.Super. 460, 470-72, 710 A.2d 556 (App.Div.1998); Marx v. Marx, 265 N.J.Super. 418, 421-28, 627 A.2d 691 (Ch.Div.1993).
The equities of the matter are the same even if considered with a focus on defendant's interest in the pension asset rather than plaintiff's. As Judge O'Donnell calculated the value of the parties' respective in futuro interests in the marital portion of the pension asset, plaintiff would receive about $216 per month and defendant $312 monthly. But the record reveals that defendant's interest in that portion of the pension asset alone has grown to about $770 per month, apart from the $1,752.82 he receives from the portion of the pension that is not part of the marital estate. Defendant is entitled to receive about $460 a month more in respect of the marital portion than was anticipated at the time of divorce. Were he to receive an even greater payment from plaintiff's share of the marital asset, the windfall would amount to an inequity.
Given the circumstances presented, Judge Herr's determination was appropriate under R. 4:50-1(f), permitting relief from a judgment for any justified reason not subsumed within subsections (a) through (e) of the rule. A motion under subsection (f) is to be made within a reasonable time in the circumstances, see R. 4:50-2, and the party requesting relief must show that enforcement of the judgment would be unjust, oppressive or inequitable. Quagliato v. Bodner, 115 N.J.Super. 133, 138, 278 A.2d 500 (App.Div.1971).

*1235 Such a motion under (f) is addressed to the discretion of the trial court. That discretion is a broad one to be exercised according to equitable principles, and the decision reached by the trial court will be accepted by an appellate tribunal in the absence of an abuse of its discretion. No categorization can be made of the situations which would warrant redress under subsection (f). As Justice Proctor noted in Hodgson v. Applegate, 31 N.J. 29, 41, 155 A.2d 97 (1959), the very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice.
[Court Invest. Co. v. Perillo, 48 N.J. 334, 341, 225 A.2d 352 (1966).]
Obviously, plaintiff could not have anticipated the issues____any more than defendant could____in advance of being notified by the pension administrator that defendant had opted for an early retirement. Her motion for relief followed with adequate dispatch after she learned of that fact and its consequences. And, given all the special circumstances presented, the equities clearly favor the result Judge Herr reached. Plaintiff's motion for relief from the judgment of divorce was properly granted under R. 4:50-1(f).
Defendant's argument based on "law of the case" called for an application of the trial court's discretion. See State v. Hale, 127 N.J.Super. 407, 410-11, 317 A.2d 731 (App.Div.1974). We discern no misapplication of that discretion in Judge Herr's rejection of the argument in the circumstances presented. Moreover, collateral estoppel and res judicata simply have no application in a situation where a party seeks to resolve an ambiguity in a judgment or order or otherwise seeks clarification, as distinguished from an instance in which the opportunity to relitigate an issue is sought. Dunne v. City of Boston, 41 Mass.App.Ct. 922, 671 N.E.2d 518, 519-20, review denied, 423 Mass. 1113, 674 N.E.2d 245 (1996); Mead v. Park Place Properties, 37 Wash.App. 403, 681 P.2d 256, 259, review denied (1984).
As far as we can tell from the record before us, defendant's remaining arguments were not raised before the trial court, and should not be considered on appeal. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). We will, nevertheless, dispose of them briefly.
An argument based on the "time of decision" rule presupposes a change in the law. Defendant has established no fundamental change since Kikkert with regard to its "fixed percentages" rule governing deferred distribution of pension rights. Kikkert, supra, 177 N.J.Super. at 478, 427 A.2d 76. All that has been shown as having occurred was a facial error in applying the rule of that case. The trial court at the time of the judgment of divorce was simply unwarranted in fixing a dollar amount payout for plaintiff's share of the deferred pension asset at such time in the future as it would come into pay status. All that was authorized under Kikkert was the award of a percentage allocation of the asset between the parties, to be applied whenever the pension came into pay status. The June 19, 1998 disposition, although based essentially on the lack of an evidentiary basis supporting plaintiff's position, had the effect of perpetuating the error; but that June 19, 1998 result was rendered ineffective in any event by the terms and understandings attending plaintiff's voluntary dismissal of her appeal from the order.
Defendant argues, finally, that plaintiff's contentions were barred by the doctrines of laches and equitable estoppel. It suffices to say that these tools of equity jurisprudence cannot validly be used to sponsor an inequitable result.
The trial court's order of February 5, 1999 is affirmed.