800 A.2d 255 (2002)
352 N.J. Super. 450
Francesca C.V. de TARQUINO, as Administratrix Ad Prosequendum of the Estate of Julio Cesar Tarquino, deceased, and Francesca C.V. de Tarquino, Individually, Plaintiffs-Appellants,
v.
The CITY OF JERSEY CITY, Jersey City Police Department, Jersey City Police Academy, Police Officer John Chiusolo, The County of Hudson, Hudson County Police Department, Hudson County Police Academy, Officer Matt Salvatore, Hudson County Jail, Somerset Police Academy, Bergen County Police and Fire Academy, Amoco Corporation, S & A Georges Amoco Corporation, Christ Hospital, Rudy Rumohr, M.D., Gilbert Melnick, M.D. and Offie Cruz, R.N., Defendants, and
Jersey City Emergency Medical Services, Pedro Reyes and Arafat Saab, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 2002.
Decided June 28, 2002.
*256 Shelley L. Stangler, Newark, argued the cause, for appellants.
Robert T. Gunning argued the cause for respondents (Reiseman Sharp Brown & Rosenberg, Parsippany, attorneys; Mr. Gunning, on the brief).
Before Judges SKILLMAN, CARCHMAN and WELLS.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
We granted plaintiff's motion for leave to appeal to determine whether the immunity N.J.S.A. 26:2K-29 confers upon "EMT-intermediate[s]" for negligence "in the rendering of intermediate life support services" extends to negligence in the preparation of the report provided to the hospital where an emergency patient is brought for treatment. We conclude that N.J.S.A. 26:2K-29 only provides immunity for negligence in connection with the actual rendering of life support services. Therefore, we reverse the summary judgment in favor of defendant Jersey City Emergency Medical Services (Emergency Medical Services), an ambulance service company, and two of its employees, defendants Pedro Reyes and Arafat Saab, which dismissed plaintiff's claim that defendants negligently failed to record on an ambulance "run sheet" that her son, a head trauma victim, had been vomiting, and that this negligence was a contributing cause of his death.
The decedent suffered his fatal injuries on May 7, 1995, as a result of an assault by a Jersey City police officer. Defendants Saab and Reyes, who are licensed emergency medical technicians (EMTs), responded to a call from the police station where the decedent was taken after the assault, and rendered emergency medical service to him. While they were rendering this service, the decedent vomited. Saab and Reyes then transported the decedent to defendant Christ Hospital. When they arrived at the hospital, Saab and Reyes gave a copy of their "run sheet," which is a report of observations and treatment of an emergency patient, to the emergency room staff. This document did not include any notation that the decedent had been vomiting, which is a significant symptom of serious brain trauma. In fact, the run sheet included the notation "N/V," which defendants acknowledge means, "negative for nausea/vomiting." After a few hours, the emergency room staff at Christ Hospital concluded that the decedent was not seriously injured and discharged him to the Jersey City police, who brought him to the Hudson County Jail.
Six hours later, the decedent began experiencing seizures and was transported to Jersey City Medical Center. Shortly thereafter, he became comatose and was subsequently declared brain dead on May 11, 1995. An autopsy revealed that the cause of death was an epidural hematoma.
Plaintiff, as administratrix ad prosequendum of her son's estate and individually, subsequently brought this wrongful *257 death and survivorship action against Emergency Medical Services, Saab and Reyes (hereinafter referred to as the EMT defendants), as well as various other defendants, for negligence in the diagnosis and treatment of her son's brain trauma. Plaintiff's claim against the EMT defendants was that they had negligently failed to record on the run sheet that the decedent had been vomiting. The EMT defendants moved for summary judgment on the ground that N.J.S.A. 26:2K-29 immunizes them from liability.
Plaintiff filed a cross-motion for leave to amend her complaint to add a claim for "spoliation of evidence and bad faith." This claim was based on the discovery, during the criminal investigation of the fatal assault upon decedent, of a second copy of the run sheet in which the box next to "vomiting" was checked off. Plaintiff asserted that the EMT defendants had altered this copy to cover up the fact that they failed to include any notation of vomiting on the run sheet they gave to the medical staff at Christ Hospital.
The trial court concluded that "the rendering of intermediate life support services" includes the preparation of a report regarding those services and that the EMT defendants were therefore entitled to immunity under N.J.S.A. 26:2K-29 for their alleged negligence in omitting any mention of vomiting in their report. The court also concluded that plaintiff had failed to present any evidence that could support a finding that the EMT defendants' services to the decedent were not rendered in "good faith," which would deprive them of the benefit of the immunity provided by N.J.S.A. 26:2K-29. Accordingly, the court granted the EMT defendants' summary judgment dismissing plaintiff's negligence claim. The court also granted plaintiff's motion to amend her complaint to assert a claim for "fraudulent concealment" of evidence, see Rosenblit v. Zimmerman, 166 N.J. 391, 403-08, 766 A.2d 749 (2001), but denied her motion to assert a claim for "bad faith." Plaintiff filed a motion for reconsideration, which the court denied. We subsequently granted plaintiff's motion for leave to appeal from the summary judgment in favor of the EMT defendants and the denial of her motion for reconsideration.
N.J.S.A. 26:2K-29 provides:
No EMT-intermediate, licensed physician, hospital or its board of trustees, officers and members of the medical staff, nurses or other employees of the hospital, or officers and members of a first aid, ambulance or rescue squad shall be liable for any civil damages as the result of an act or the omission of an act committed while in training for or in the rendering of intermediate life support services in good faith and in accordance with this act.
The question presented by this appeal is whether the immunity which N.J.S.A. 26:2K-29 confers upon "EMT-intermediate[s]" for alleged negligence "in the rendering of intermediate life support services" extends to negligence in the preparation of a report regarding those services and the condition of the emergency patient. N.J.S.A. 26:2K-21(i) defines "intermediate life support services" as:
an intermediate level of pre-hospital, inter-hospital, and emergency service care which includes basic life support functions, cardiac monitoring, cardiac defibrillation, the use of the esophageal obturator airway, and the use of military anti-shock trousers and other techniques and procedures authorized by the commissioner[.]
N.J.S.A. 26:2K-21(b) defines "[b]asic life support services" which are included in "[i]ntermediate life support services," as "a *258 basic level of pre-hospital care which includes patient stabilization, airway clearance, cardiopulmonary resuscitation, hemorrhage control, initial wound care and fracture stabilization and other techniques and procedures authorized by the commissioner."
We have no doubt that the medical services Reyes and Saab rendered to the decedent at the Jersey City police station and while transporting him to Christ Hospital constituted "intermediate life support services" within the intent of these statutory provisions. However, plaintiff's claim is not predicated on alleged negligence in the direct "rendering" of those services but rather in failing to note in the report provided to Christ Hospital that the decedent had been vomiting. Consequently, the EMT defendants would be entitled to immunity under N.J.S.A. 26:2K-29 only if the "rendering of intermediate life support services" includes the preparation of a report regarding those services.
N.J.S.A. 26:2K-29 is one of a series of statutes enacted between 1963 and 1998 which provide qualified immunity to persons who provide medical assistance in emergency situations. L. 1963, c. 140; L. 1968, c. 254; L. 1987, c. 296 (N.J.S.A. 2A:62A-1); L. 1996, c. 115 (N.J.S.A. 2A:62A-1.1); L. 1998, c. 101 (N.J.S.A. 2A:62A-1.2); L. 1984, c. 146 (N.J.S.A. 26:2K-14); L. 1985, c. 351 (N.J.S.A. 26:2K-29); L. 1989, c. 314; L. 1996, c. 136 (N.J.S.A. 26:2K-43). The first of these statutes, N.J.S.A. 2A:62A-1, known as the "Good Samaritan Act," N.J.S.A. 2A:62A-2, now provides immunity to any person, including a volunteer member of a first aid emergency or volunteer ambulance or rescue squad, for negligence in rendering emergency care at the scene of an accident or emergency. N.J.S.A. 2A:62A-1.1 and 1.2 explicitly extend this immunity to law enforcement officers and firefighters. N.J.S.A. 26:2K-14 provides an immunity that is virtually identical to N.J.S.A. 26:2K-29 to intensive care paramedics and others for negligence in the rendering of "advanced life support services," and N.J.S.A. 26:2K-43 provides the same immunity to emergency medical technicians certified to perform cardiac defibrillation and others for negligence in performing cardiac defibrillation.
All of the statutes providing qualified immunity for negligence in the rendering of emergency medical services are in derogation of common law negligence principles. See Velazquez v. Jiminez, 172 N.J. 240, 248-49, 798 A.2d 51 (2002). "Where a statute alters the common law, the most circumscribed reading of it that achieves its purpose is the one that should be adopted." Id. at 257, 798 A.2d 51. Application of this principle to statutes that confer immunity for negligence in rendering emergency medical services furthers this State's "tradition of giving `narrow range' to statutes granting immunity from tort liability because they leave `unredressed injury and loss resulting from wrongful conduct.'" Ibid. (quoting Harrison v. Middlesex Water Co., 80 N.J. 391, 401, 403 A.2d 910 (1979)). Consequently, the question is whether the immunity which N.J.S.A. 26:2K-29 confers for "the rendering of intermediate life support services" must be read to include immunity for negligence in the preparation of a report regarding those services in order to achieve its purpose.
The qualified immunity that N.J.S.A. 26:2K-29 and related statutes confer upon EMT-intermediates and others who perform medical services at the scene of emergencies, such as airway clearance, cardiopulmonary resuscitation and cardiac defibrillation, recognizes that such emergency services pose a higher risk of error than the performance of the *259 same services by a licensed physician in a hospital and therefore that emergency medical personnel should not be inhibited in performing those services by fear of tort liability. However, the completion of an accurate report concerning those medical services and the observations of a patient's condition does not involve the same difficulties as the actual performance of emergency medical services outside a hospital. Therefore, the legislative policy of immunizing persons from liability for negligence in performing emergency medical services may be achieved without construing that immunity to extend to negligence in the preparation of the report provided to the hospital where an emergency patient is brought for treatment.
If the Legislature had intended to confer a more expansive form of immunity upon EMT-intermediates, it could have conferred general immunity upon such persons for any negligent conduct in the performance of their duties including negligent operation of a motor vehicle. Instead, the Legislature explicitly limited the immunity to negligence "committed while in training for or in the rendering of intermediate life support services in good faith and in accordance with this act," N.J.S.A. 26:2K-29, and defined "intermediate life support services" as an "intermediate level of pre-hospital, inter-hospital, and emergency service care," N.J.S.A. 26:2K-21(i). The statute further defined "emergency service care" as including specific treatment modalities, including "cardiac defibrillation," and the "use of the esophageal obturator airway." Ibid. The preparation of a report is not itself a treatment modality. Thus, a "circumscribed reading" of these statutory provisions, Velazquez, 172 N.J. at 257, 798 A.2d 51, leads to the conclusion that "the rendering of intermediate life support services" does not include the preparation of a report regarding those services and the patient's condition.
Finally, the arguments presented under Point III of the EMT defendants' brief regarding the order granting plaintiff's motion to amend her complaint are not properly before us, because the EMT defendants failed to file a motion for leave to cross-appeal. R. 2:5-6(b); see Linek v. Korbeil, 333 N.J.Super. 464, 471, 755 A.2d 1229 (App.Div.), certif. denied, 165 N.J. 676, 762 A.2d 657 (2000).
Accordingly, the summary judgment in favor of the EMT defendants is reversed and the case is remanded to the trial court.