823 A.2d 61

MOHAMMED SHEHAIBER, ADMINISTRATOR AD PROSEQUEN-
DUM OF THE ESTATE OF KHALID SHEHAIBER, DECEASED,
AND MOHAMMED SHEHAIBER, INDIVIDUALLY, MONA SAK-
ER AND OMAR SHEHAIBER, PLAINTIFFS-APPELLANTS, v.
UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JER-
SEY AND LEROY SMITH, JR., DEFENDANTS-RESPONDENTS,
AND PENNI COUGHLIN SHEHAIBER, CITY OF NEWARK, A
MUNICIPAL CORPORATION OF THE STATE OF NEW JER-
SEY, CITY OF NEWARK POLICE DEPARTMENT, CITY OF
NEWARK FIRE DEPARTMENT, KEVIN LASSITER, ANTHONY
GIBSON, TAMIKO CAMPBELL, ANTOINETTE ALVARADO,
"JOHN" PARABOSCHI, KEITH SHEPPARD, "JOHN" SABUR
AND "JOHN" ROBINSON, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued May 13, 2003—Decided May 23, 2003.

Before Judges PRESSLER, BILDER and HOENS.

*Alan Roth* argued the cause for appellants (*Bendit Weinstock*, attorneys; *Lisa A. Lehrer*, of counsel and on the brief).

*Michael R. Ricciardulli* argued the cause for respondents (*Ruprecht, Hart & Weeks,* attorneys; *Mr. Ricciardulli,* of counsel; *Nan C. Gallagher,* on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

This negligence action arises out of the tragic drowning of a five-year old child in a backyard pool. Following the grant of partial summary judgment dismissing the action as against the University of Medicine & Dentistry (UMDNJ), the action was settled as against the remaining named defendants. A final order was then entered, and plaintiffs filed this appeal challenging the partial summary judgment. We affirm.

The relevant facts are not in material dispute. On August 14, 1996, plaintiff Mohammed Shehaiber, his wife Mona Saker, and their children were residing in Newark in the home of Shehaiber's former wife, defendant Penni Coughlin Shehaiber (Coughlin). They had then been there about a month or a month and a half. The property had a 15 by 32 foot in-ground pool which not only had been unmaintained for several years but had also been used for some time as a dumping ground for all manner of waste and debris becoming a cesspool rather than a swimming pool. The water was black and there was no subsurface visibility. On that day, Mona Saker had been watching television with the children. She left the room briefly to attend to her baby, and when she returned she saw that the pole used to keep the patio door shut had been removed and her three-year old son Omar was outside in the backyard. Omar reported that five-year old Khalid had fallen into the pool. She ran outside to the pool but did not see any movement on the surface of the water. With the assistance of a neighbor who heard her screams, she called 911, and within three or four minutes emergency assistance arrived, including Newark police and firemen and an emergency medical technician (EMT) squad from UMDNJ.

A great deal of activity at the scene ensued. The house itself was searched for Khalid as the emergency personnel could not be sure of the reliability of Omar's report. Floodlights were set up in an effort to pierce the impenetrability of the water. Poles were used to drag the pool. Perimeters around the scene were established. But no one immediately entered the pool itself. Some twenty minutes after the arrival of the emergency personnel, Leroy Smith, Jr., the off-duty associate director of UMDNJ's Emergency Services, arrived at the scene, entered the pool and retrieved the child. Some emergency aid was rendered at the scene and the child was transported to UMDNJ where he died the next day.

This action ensued. Mohammed Shehaiber, individually and as administrator ad prosequendum of the estate of Khalid, Mona Saker, and Omar Shehaiber filed a complaint in four counts. The first count sought damages against Coughlin for her negligence in maintaining the pool. The second count sought damages against the City of Newark, its police and fire departments and named personnel, asserting their negligence in the rescue efforts. The third count sought damages against UMDNJ, Leroy Smith, Jr., and unnamed "John Doe" EMTs, asserting their negligence in the rescue efforts. The fourth count sought emotional distress damages for Khalid's parents and his brother Omar based on their witnessing of the tragic events.

UMDNJ and Smith moved for summary judgment dismissing the complaint as to them. Plaintiffs withdrew their objection to the motion on behalf of Smith, who had actually entered the pool and retrieved the boy, sustaining bodily injury to himself. The issue then before the court was only as to UMDNJ's vicarious liability for the asserted negligence of the EMTs designated in the complaint only as John Does.

The trial judge granted UMDNJ's motion for summary judgment on the theory that the conduct of the unnamed EMTs had been rendered immune from liability by *N.J.S.A.* 26:2K–14 (advanced life support services) and *N.J.S.A.* 26:2K–29 (intermediate

life support services), both of which, in identical language, immunize EMTs from liability for civil damages resulting from "an act or the omission of an act committed while in training for or in the rendering of ... life support services in good faith and in accordance with this act." The trial judge noted that the only claim made against UMDNJ was vicarious liability[1] and reasoned that vicarious liability cannot attach to a principal whose agent is immune from liability. Plaintiffs do not challenge that proposition but, rather, urge the actionability of their cause against the EMTs despite the statutory immunity.

Thus plaintiffs argue that their proofs in resisting the summary judgment motion demonstrated a prima facie case of EMT negligence in three basic respects. The first was in their collective failure to enter the pool in the first twenty minutes in an attempt to retrieve the child. The second was in their alleged negligence in rendering medical aid to the child after he was removed from the pool. The third was in their alleged failure to provide leadership at the pool in the rescue efforts.

As to the actual rendering or failure properly to render emergency medical aid after the boy was removed from the pool, we have no doubt that the statutory qualified immunity applies, and we affirm the trial judge's ruling in that respect for the reasons he stated. See also De Tarquino v. City of Jersey City, 352 N.J.Super. 450, 455–456, 800 A.2d 255 (App.Div.2002). The question then is whether liability can attach to the EMTs for failure to enter the pool and failure to supervise the rescue efforts. We think it plain that neither failure comes within the ambit of negligence in providing basic life support services. The issue, as we view it, is thus not one of immunity but rather one of duty. Simply put, did the EMTs have the duty of entering that pool or of supervising the rescue efforts being simultaneously attempted

---

[1] We note that plaintiffs had submitted an expert's report in support of its liability claims against all defendants. Nothing in the report suggests a theory of direct negligence against UMDNJ.

by the police and fire fighters at the scene? We are constrained to conclude that they did not.

It is, of course, well settled that the existence of a duty is a question of law to be decided on a case by case basis and that if there is no preexisting legal duty, there is no requirement that a party volunteer to act. *Velazquez ex rel. Velazquez v. Jiminez,* 172 *N.J.* 240, 263, 798 *A.*2d 51 (2002). There is nothing in this record suggesting that when police, firefighters and EMTs are simultaneously at an accident scene where a rescue effort is required, it is the duty of the EMTs to supervise the rescue efforts, and plaintiffs point to no legal authority imposing such a duty upon them. Indeed, the contrary would appear to be so. We note, analogously, that at the scene of a traffic accident involving personal injuries, the Highway Safety Act, *N.J.S.A.* 27:5F–13.1, requires a law enforcement officer at the scene to permit a licensed person to render medical aid "unless in the judgment of the law enforcement officer in charge, considerations of the public health, safety and welfare are of overriding concern in a particular situation." At least in that context, then, it is the police officer who is in charge and must therefore supervise the rescue activities at the scene.

With respect to the EMT's entry into the pool, we are also satisfied that no duty existed as a matter of law. As pointed out by *De Tarquino, supra,* 352 *N.J.Super.* at 454–455, 800 *A.*2d 255, EMTs are trained in the modalities of medical services that may be required at the scene of emergencies and the transport of injured or stricken persons from the scene of the emergency to the hospital. We have thoroughly canvassed Chapter 2K of Title 26 which addresses the training, certifications and activities of EMTs, as well as the implementing regulations, *N.J.A.C.* 8:40A–2.1, and find nothing indicating that EMTs are required to be trained in or to perform lifeguard services, and certainly not lifeguard services in a body of water posing such obvious risk of harm to a potential rescuer. We are persuaded that Leroy

Smith's entry into the pool was the act of a volunteer rather than an act of duty.

In arguing that there was a duty, plaintiffs urge that extrication of victims is a life support service. That argument, of course, cuts both ways. If extrication of this child from that pool constituted a life support service, it would be immune from liability under the specific qualified immunity of the Act. But in any event, we do not believe that extrication of the child from the pool can be regarded as a life support service required to be performed by EMTs. Plaintiffs rely, by analogy, on the training and duty of EMTs properly to extricate victims of traffic accidents. But that obligation is expressly created by statutory and regulatory authority. *N.J.S.A.* 26:2K–33 provides that nothing in the Act "shall be construed as interfering with an emergency service training program authorized and operated under the provisions of the 'New Jersey Highway Safety Act of 1971,' P.L.1971, c. 351 (C.27:5F–1 et seq.)." The New Jersey Highway Traffic Safety Program incorporates, for first aid, rescue, and ambulance squads, such training as complies with the uniform standards promulgated by the United States Secretary of Transportation in accordance with the United States Highway Safety Act of 1966, 23 *U.S.C.A.* §§ 401–404. More specifically, *N.J.A.C.* 8:40A–6.4 incorporates by reference, as the basic training program for EMTs, the Emergency Medical Technician—Basic National Standard Curriculum, promulgated by the Secretary of Transportation under that statutory authority. We have also reviewed that Curriculum[2] and while it does require training in what appears to be every aspect of dealing with victims of traffic accidents, we find nothing requiring training in water rescues prior to the victim's retrieval.

In sum, the duty of EMTs is to perform those services for which they are trained or are otherwise required by law to render. They are not required to be trained in or to perform water

---

[2] *N.J.A.C.* 8:40–6.4 refers to the Internet, WWW.NHTSA.DOT.GOV. for access to the Curriculum.

rescues. They consequently cannot be charged with the duty to attempt a water rescue and thus cannot be held liable for not volunteering to do so. We are therefore convinced that the question presented, whether duty as an underlying element of negligence existed here, was a matter of law compelling the conclusion that no duty existed.

The partial summary judgment appealed from is affirmed.