**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2061-22

EDDIE HILL,

 Plaintiff-Appellant,

v.

STATE OPERATED SCHOOL
DISTRICT OF THE CITY OF
PATERSON, PATERSON
PUBLIC SCHOOLS, DONNIE
W. EVANS, and JAMES
SMITH,

 Defendants-Respondents.

_____

Submitted April 9, 2024 – Decided September 11, 2024

Before Judges Gooden Brown and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1949-17.

Linder Wing Law Group, attorneys for appellant (Ryan Linder, on the briefs).

The Murray Law Firm, LLC, attorneys for respondent (Karen A. Murray, on the brief).

PER CURIAM

Plaintiff Eddie Hill appeals from the January 30, 2023, Law Division order denying reconsideration of an August 4, 2022, order denying plaintiff's motion to reinstate his complaint by vacating a March 11, 2019, order of dismissal. We affirm.

On March 16, 2017, plaintiff filed a five-count complaint alleging various causes of action against defendants State Operated School District of the City of Paterson (the District), Paterson Public Schools, Donnie W. Evans, and James Smith. Plaintiff was a tenured special education teacher in the District. Evans was the superintendent of schools, and Smith served as the executive director of security for the District. The complaint arose from the entry of a memorandum of understanding (MOU) to resolve claims between plaintiff and the District.

According to the complaint, plaintiff and Evans entered into the MOU on February 24, 2014, to resolve claims that plaintiff overstated the number of hours worked while providing at-home instruction to students with individualized education programs. As part of the MOU, plaintiff agreed to resign without contesting the charges, repay the District the amount received for his overstated work hours, and release and waive all claims he had against the District. As consideration, the District would provide neutral employment

references, remove mention of the incident from plaintiff's personnel file, and maintain confidentiality of the MOU and underlying incident, in addition to not "tak[ing] any further action" against plaintiff or his teaching certifications.

In the complaint, plaintiff alleged that in February 2016, after he obtained a similar job with the Union Township Board of Education (UBOE), the District violated the MOU when Smith "contacted the State Board of Education, Passaic County Prosecutor['s] Office and other governmental agencies" to alert them to the incident. As a result, the Passaic County Prosecutor charged plaintiff by way of accusation with third-degree theft by deception. In resolving the charge, plaintiff agreed to disqualification from public office or position,[1] severed his employment with the UBOE,[2] and surrendered his professional license.

---

[1]  N.J.S.A. 2C:51-2(a) requires a public employee to forfeit his or her employment if convicted "of an offense involving dishonesty or of a crime of the third degree" or "involving or touching such office, position or employment." Under N.J.S.A. 2C:51-2(d), upon conviction, a public employee "shall be forever disqualified from holding any office or position of honor, trust or profit" in the State.

[2]  The record contains two court orders concerning plaintiff's forfeiture of his public employment and future disqualification. In the first order, dated December 23, 2015, plaintiff agreed to forfeit his present employment with the UBOE. In the second order, dated February 19, 2016, plaintiff agreed "to be forever disqualified from holding any office or position of honor, trust, or profit under this State or any of its administrative or political subdivisions."

3

Defendants filed a contesting answer on July 10, 2017. Thereafter, the parties conducted initial discovery, during which plaintiff, Smith, and one of the District's former in-house counsel were deposed. Further, between late 2017 and December 2018, the parties attended court-ordered mediation sessions. On December 18, 2018, plaintiff's attorney wrote to defendants' attorney "to confirm that the . . . matter ha[d] been resolved at a mediation session."

In the December 18, 2018, letter, plaintiff's counsel wrote that the proposed terms included, among other things, that:

> Th[e] accord [wa]s contingent on approval by the [District's Board]. The Board shall make its decision no later than its February 2019 regularly scheduled meeting[;]
>
> . . . If . . . plaintiff is unable to secure comparable employment with the [D]istrict, . . . plaintiff will be free to resume litigating th[e] matter[; and]
>
> . . . The parties shall contact the [c]ourt and ask[] that the litigation be stayed pending the Board's consideration of the . . . accord.

In a January 9, 2019, letter, plaintiff's attorney informed the court that "[the] matter was resolved at a mediation session that took place in December . . . 2018." In the letter, plaintiff's counsel requested that "all proceedings in th[e] matter be stayed until the settlement is finalized" because "the settlement is contingent on approval by the [District's Board]" and

"plaintiff's ability to reapply for and secure his professional license." On February 15, 2019, the parties entered a consent order for enlargement of time pursuant to Rule 1:3-4, staying "all proceedings . . . pending the approval and implementation of a settlement agreement" and further ordering the parties to "report [the status of the settlement] to the court in [sixty] days."

On March 11, 2019, the presiding judge entered an order of disposition stating the matter had been "settled" and eCourts marked the case as dismissed.[3] Nothing in the record shows any communication by either party to the court updating it on the status of the settlement agreement in accordance with the February 15 consent order. Nevertheless, the parties' attorneys continued to communicate with each other about the case by email. Specifically, between February 2019 and April 2021, the attorneys discussed different lump sum payments as part of the settlement agreement and alternative scenarios should plaintiff be unsuccessful in vacating his conviction. During the exchanges, defendants' attorney reminded plaintiff of the requirement that the District's Board approve the agreement and alerted plaintiff that the litigation had been dismissed.

---

[3] The eCourts entry specified that an "Order Of Dismissal/Case Settled" was "granted" by the trial court on March 11, 2019.

A-2061-22

On January 19, 2022, plaintiff moved to enforce the settlement agreement. Following oral argument, the motion judge denied plaintiff's motion in an April 18, 2022, order. In an oral statement of reasons on the record, the judge determined that despite there being evidence of "some discussion" of a settlement agreement, "the last thing filed by the parties was not . . . a settlement" but "a request for a stay." The judge reasoned that "a settlement means there are no outstanding issues between the parties," and thus plaintiff's proffered "conditional settlement mean[t] there [wa]s no settlement."

The judge further explained that "[e]verything [plaintiff's attorney] ha[d] said and filed indicate[d] the exact opposite" of a settlement, especially in light of the requirement that the settlement receive "approval . . . from the [District's B]oard" and the "caveat that if [plaintiff was] not reinstated," negotiations would continue. Additionally, the judge noted that both parties should have alerted the court of a mistake when they received notice of the March 11, 2019, order of disposition. Therefore, the judge refused to reopen the matter for "relitigat[ion]" until "there[ was] a motion filed that provide[d] a basis for it to be reopened." Plaintiff did not timely appeal the April 18, 2022, order.

Thereafter, plaintiff moved to reopen and reinstate the case. On August 4, 2022, the judge heard oral argument on plaintiff's motion. Plaintiff requested

A-2061-22

that the court reinstate the matter to the active trial calendar under Rule 1:1-2 for "good cause" shown and "an absence of prejudice to . . . defendant."   In support, plaintiff primarily relied on Audubon Volunteer Fire Co. No. 1 v. Church Construction Co., 206 N.J. Super. 405 (App. Div. 1986), and Ghandi v. Cespedes, 390 N.J. Super. 193 (App. Div. 2007).

The judge rejected plaintiff's argument and found that Rule 1:1-2 did not provide the court with a mechanism to reopen a dismissed matter.  The judge explained:

> [Rule 1:1-2] is a rule of construction, it is not a rule that provides a mechanism for someone to challenge an order[.] . . . .  [A]nd I do[ not] believe the cases you cited do that.   I[ am] not aware of any case that . . . reopened a matter or reinstated a matter or dealt with a dismissal under [Rule ]1:1-2 as the triggering rule.

After unsuccessfully prodding plaintiff's counsel to cite a rule under which the motion could advance, the judge stated,

> [B]y default, we[ are] going to assume it[ is] [Rule ]4:50-1 . . . .  [A]nd to be fair, [you] did sort of address that in your reply papers, so it[ is] not as if it[ is] coming out of left field . . . .   [Y]ou kn[e]w it [was] likely the [c]ourt would look at that as the rule.

After reviewing Rule 4:50-1(a) through (f), and hearing arguments from both parties, the judge denied plaintiff's motion.  The judge explained:

A-2061-22

> Rule 4:50-1 is a rule that provides for relief from a judgment in six enumerated circumstances. . . . Rule 4:50-1 is not a pathway to reopen litigation. . . . [I]t[ is] a carefully crafted vehicle intended to underscore the need for repose while achieving a just result. . . . [T]he rule denominates with specificity the narrow band of triggering events that will warrant relief from judgment if justice is to be served. And only the existence of one of those triggers will allow a party to challenge the substance of the judgment.

The judge noted that although the March 11, 2019, order of disposition may have been entered in error, relief under Rule 4:50-1(a) for "mistake, inadvertence, surprise, or excusable neglect" required plaintiff to file a motion within one year of the order. See R. 4:50-2. The judge also found that a motion supported by Rule 4:50-1(b) through (e) was time barred, and rejected plaintiff's argument that the COVID-19 pandemic created exceptional circumstances for which any time limitation under the Rule should be expanded.

Specifically rejecting plaintiff's reliance on the "catch-all" provision of Rule 4:50-1(f), the judge commented:

> [D]espite its expansive parameters of any other reason, [Rule 4:50-1(f)] does not provide the [c]ourt with the authority to grant relief when the moving party has not demonstrated that it itself is not guilty of inexcusable neglect. Because, if that were true, then subsection (f) would completely render the remaining subsections meaningless.

> For that reason, I . . . find that even giving . . . plaintiff the most extreme benefit[,] . . . there is simply nothing presented that would even approach the exceptional circumstances requirement under <u>Rule</u> 4:50-1(f).
>
> In addition to the fact that that standard was not even argued in the papers by . . . plaintiff, it was considered by the [c]ourt, but there . . . is . . . nothing that has been pointed to that would allow me to grant the very extraordinary relief being sought here three years after the entry of the order by the [c]ourt.

The judge entered an order of the same date memorializing her decision denying plaintiff's motion to reinstate.

Thereafter, plaintiff moved for reconsideration. On January 30, 2023, following oral argument, the judge denied plaintiff's motion pursuant to <u>Rule</u> 4:49-2. In an accompanying oral statement of reasons, the judge determined plaintiff failed to meet the standard for reconsideration. This appeal followed.[4]

Plaintiff raises the following points for our consideration:

POINT ONE

---

[4] Plaintiff's March 15, 2023, notice of appeal identified three trial court orders: (1) the April 18, 2022, order denying plaintiff's motion to enforce the settlement agreement; (2) the August 4, 2022, order denying plaintiff's motion to set aside the court's March 11, 2019, order dismissing the matter as "settled"; and (3) the January 30, 2023, order denying reconsideration. We denied plaintiff's motion to file as within time his appeal of the April 18, 2022, order, noting that "the time to appeal a final order may not be extended beyond thirty days" pursuant to <u>Rule</u> 2:4-4(a). We therefore limit our review to the remaining two orders.

THE UNDERLYING CASE SHOULD HAVE BEEN REINSTATED[] BECAUSE THE PLAINTIFF DEMONSTRATED THE EXISTENCE OF GOOD CAUSE AND THE ABSENCE OF PREJUDICE TO THE DISTRICT.

POINT TWO

PURSUANT TO [RULE] 1:1-2, PLAINTIFF'S CASE SHOULD BE REINSTATED TO AVOID A MANIFEST INJUSTICE.

POINT THREE

THE PLAINTIFF DEMONSTRATED THE EXISTENCE OF EXCEPTIONAL CIRCUMSTANCES AND THAT THE APPLICATION OF THE ORDER WOULD BE INEQUITABLE, AS SUCH HIS COMPLAINT SHOULD BE RESTORED TO THE ACTIVE TRIAL CALENDAR PURSUANT TO R[ULE] 4:50-1(F).

We review a trial judge's denial of a motion to set aside an order under Rule 4:50-1 for an abuse of discretion, guided by equitable principles. Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). An abuse of discretion arises when a decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)).

10

We likewise review a trial judge's decision to grant or deny a motion for reconsideration under the abuse of discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Under Rule 4:49-2, reconsideration is appropriate for a "'narrow corridor'" of cases in which the court's decision was made upon a "'palpably incorrect or irrational basis,'" or where "'it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.'" Fusco v. Bd. of Educ., 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). We are not, however, bound by the trial court's legal conclusions or its "'interpretation of the law and the legal consequences that flow from established facts.'" Alfano v. BDO Seidman, LLP, 393 N.J. Super. 560, 573 (App. Div. 2007) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Based on our review of the record in light of the governing legal principles, we discern no abuse of discretion in the determinations made by the judge and affirm substantially for the reasons stated in the judge's cogent and well-reasoned oral opinions. Plaintiff reprises his argument that the underlying matter should be reinstated from the "administrative dismiss[al]" based on "good cause" because he was entirely blameless and defendant suffered no prejudice.

11

Plaintiff also contends that he "demonstrated the existence of exceptional circumstances" required under Rule 4:50-1(f) to vacate the dismissal because the March 11, 2019, order "is beyond ambiguous."

Under Rule 4:50-1, the trial court may relieve a party from a final judgment or order for "(a) mistake; (b) newly discovered evidence; (c) fraud; (d) because the judgment or order is void; (e) the judgment or order has been satisfied, released, reversed, or otherwise vacated; or (f) 'any other reason justifying relief from the operation of the judgment or order.'" MTAG v. Tao Invs., LLC, 476 N.J. Super. 324, 333 (App. Div. 2023) (quoting R. 4:50-1(a) to (f)), certif. denied, 255 N.J. 447 (2023). A motion under subsections (a), (b), and (c) of the Rule must be made within one year of the judgment or order, and "within a reasonable time" under any other subsection. R. 4:50-2. In determining whether a motion was made within a reasonable time, the court must consider "the surrounding circumstances including the length of time that has passed and a due consideration for competing rights and interests which have come to exist." Friedman v. Monaco & Brown Corp., 258 N.J. Super. 539, 543 (App. Div. 1992).

Rule 4:50-1 "[was] designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should

have authority to avoid an unjust result in any given case." BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 123 (App. Div. 2021) (quoting Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J. 113, 120 (1977)). As such, a motion for relief under Rule 4:50-1 should be granted "'sparingly [and only] in exceptional situations . . . in which, were it not applied, a grave injustice would occur.'" Badalamenti by Badalamenti v. Simpkiss, 422 N.J. Super. 86, 103 (App. Div. 2011) (alterations in original) (quoting Little, 135 N.J. at 289). The movant bears the burden of demonstrating his or her entitlement to relief under the rule. See Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 425-26 (App. Div. 2003).

On appeal, plaintiff relies solely on subsection (f) of Rule 4:50-1. We acknowledge that plaintiff did not voluntarily dismiss his action but that he and defendants were engaging in settlement discussions during a stay of the litigation when the court entered the March 11, 2019, dismissal order. However, we conclude the judge did not abuse her discretion in finding that plaintiff's nearly three-year delay in seeking relief was not reasonable as required under Rule 4:50-1(f).

Regardless of whether plaintiff received notice of the March 11, 2019, order effectively dismissing his action, a three-year delay was not reasonable

especially in light of the parties' obligation to report to the court within sixty days of the February 15, 2019, consent order staying the litigation and defendants' counsel's repeated references to the dismissal. Once plaintiff's counsel was made aware of the dismissal order, it was incumbent upon him to take affirmative steps to reinstate his client's claims. Denial of plaintiff's motion to reinstate was, therefore, warranted under Rule 4:50-2.

Even if we consider the merits, we agree with the judge that plaintiff failed to articulate "any other reason justifying relief from the operation of the . . . order." R. 4:50-1(f). Other than a general claim that the disruption of court proceedings during the COVID-19 pandemic caused confusion or delay, plaintiff provided no other compelling reason on which the judge could find "exceptional circumstances." See Badalamenti, 422 N.J. Super. at 103 ("When an application is made under Rule 4:50-1(f), 'the party requesting relief must show that enforcement of the judgment would be unjust, oppressive or inequitable.'" (quoting Linek v. Korbeil, 333 N.J. Super. 464, 474 (App. Div. 2000))). We do not find plaintiff's contentions that the entry of the March 11 order was "confusing" or that "[t]he nature of the settlement took more than a year" convincing reasons for relief from a final order.

We also reject plaintiff's contention that his motion was governed by Rule 1:1-2 and a "good cause" standard. We agree with the judge that Rule 1:1-2 is "a rule of construction" and not "a mechanism for someone to challenge an order." Indeed, the Rule expressly provides that "[u]nless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice." R. 1:1-2(a). The Rule does not provide that any order may be relaxed or dispensed with by the court. Indeed, Rule 4:50-1 is the clear mechanism by which a party may move to vacate a final order he or she believes imposes an unjust result. See BV001 REO Blocker, 467 N.J. Super. at 123.

Contrary to plaintiff's argument, Audubon and Ghandi are inapplicable here. In Audubon, the defendant sought to file a late answer after lengthy settlement discussions. 206 N.J. Super. at 405-06. After the trial court rejected the parties' proposed consent order extending the time to answer, the defendant filed an unopposed formal motion. Id. at 406. Despite there being no clear prejudice to the plaintiff, the trial court denied the defendant's motion by telephone. Ibid. The plaintiff then obtained a default, and the trial court entered a judgment against the defendant after a proof hearing. Ibid. We reversed, observing that "the shepherding function we serve is abused by unnecessarily

15                                                                    A-2061-22

closing the courtroom doors to a litigant whose only sin is to retain a lawyer who delays filing an answer during settlement negotiations." Id. at 406-07. In referencing other means short of dismissal available to the court in "performing [its] shepherding function," we cited Rule 1:1-2, among others. Id. at 407.

In Ghandi, the plaintiff's attorney prepared a request for entry of default against the defendants who failed to timely answer plaintiff's October 2003 complaint. 390 N.J. Super. at 195. However, the plaintiff's attorney inadvertently failed to file it. Ibid. In May 2004, the court entered an administrative order dismissing the matter pursuant to Rule 1:13-7(a) for lack of prosecution. Ibid. In August 2005, the plaintiff filed an unopposed motion to restore, which the trial judge denied. Ibid. In reversing, we concluded that the plaintiff's motion to reinstate his administratively dismissed action under Rule 1:13-7, which governs the dismissal of civil cases for lack of prosecution and the requirements for reinstatement, should have been granted for "good cause." Id. at 196-98. We stated that "absent a finding of fault by the plaintiff and prejudice to the defendant, a motion to restore under the rule should be viewed with great liberality." Id. at 197.

We applied the principles articulated in Audubon to relax Rule 1:13-7, stating:

> Because, with certain exceptions not applicable here, "any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice," R. 1:1-2, "courts should be reluctant to penalize a blameless client for the mistakes of the attorney." Familia v. Univ. Hosp. of Univ. of Med. & Dentistry of N.J., 350 N.J. Super. 563, 568 (App. Div. 2002).
>
> [Ghandi, 390 N.J. Super. at 198.]

Here, plaintiff makes no reference to Rule 1:13-7 either in his merits brief or before the trial court. Moreover, unlike Audubon and Ghandi, defendants assert they would be "substantially prejudiced" if the case was reinstated. Defendants would now be called upon to defend against a complaint arising from events that occurred approximately eight years ago after nearly three years of inactivity. Such an outcome would be untenable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2061-22