696 A.2d 82

NOLAN REAVES AND JOSEPH J. LEE, PLAINTIFFS–RESPON-
DENTS, v. STATE OF NEW JERSEY, DEPARTMENT OF LAW
& PUBLIC SAFETY, DIVISION ON CIVIL RIGHTS, C. GREGO-
RY STEWART, LORRAINE L. WATSON, NANCI R. GULYA,
DEBRA SIMMONS, OLIVER DEWEEVER, NILSA RIVERA,
STUART SHERMAN, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued April 30, 1997—Decided July 8, 1997.

Before Judges LONG, SKILLMAN and CUFF.

*Patricia A. Schiripo,* Deputy Attorney General, argued the cause for appellants (*Peter Verniero,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Ms. Schiripo,* on the brief).

*Glenn A. Bergenfield,* argued the cause for respondents.

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The issue presented by this appeal is whether the Division on Civil Rights (DCR) and its employees may be held liable under the Tort Claims Act, *N.J.S.A.* 59:1–1 to 12–3, for negligently failing to conduct a prompt investigation of a discrimination complaint. We conclude that the DCR and its employees are entitled to immunity from such a suit because a government agency's negligent failure to conduct a prompt investigation of a complaint constitutes "[a

failure] to enforce [a] law" within the intent of *N.J.S.A.* 59:2–4 and *N.J.S.A.* 59:3–5.

In October of 1984, plaintiffs filed complaints with the DCR alleging that Goodyear Tire and Rubber Company (Goodyear) discriminated on the basis of race in refusing to promote them to a supervisory position. Although the DCR subpoenaed certain of Goodyear's employment records and conducted a "fact finding conference," it did not complete its investigation and evaluation of plaintiffs' complaints until more than eight years later, when it issued findings of "probable cause."

In May of 1994 the DCR transmitted plaintiffs' complaints to the Office of Administrative Law (OAL) for a hearing. Goodyear responded by filing a motion for a summary decision dismissing the complaints because of the DCR's delay in completing its investigation. Goodyear filed certifications in support of its motion, indicating that it had been prejudiced by the DCR's delay because one of its employees involved in the decision to promote a caucasian employee rather than one of the plaintiffs had died, three others had left the company and could not be located, and the remainder no longer had any recollection of the circumstances relating to the promotion. An Administrative Law Judge (ALJ) granted Goodyear's motion to dismiss, concluding that the DCR's delay was "unexplained and inexcusable" and "so unduly lengthy" that it had prejudiced Goodyear's ability to defend. The Acting Director of the DCR subsequently affirmed the ALJ's recommended decision dismissing plaintiffs' complaints. Plaintiffs did not appeal from that decision.

Thereafter, plaintiffs filed this action against the DCR, C. Gregory Stewart, who was Director of the DCR during part of the time it was processing plaintiffs' complaints, Stuart Sherman, who was the DCR's Chief of Enforcement, and other defendants identified as investigators responsible for handling plaintiffs' complaints, alleging that defendants had negligently failed to investigate plaintiffs' complaints in a timely manner. Defendants moved to dismiss the complaint on the basis of various immunities

provided under the Tort Claims Act. The trial court denied defendants' motion, concluding that the Tort Claims Act does not provide the DCR or its employees with "absolute immunity" from a claim predicated on alleged delay in processing a complaint. We granted defendants' motion for leave to appeal.

The Tort Claims Act provides immunity to both public entities and employees from liability for any "injury caused ... by [a failure] to enforce any law." *N.J.S.A.* 59:2–4; *N.J.S.A.* 59:3–5. In *Bombace v. City of Newark*, 125 *N.J.* 361, 593 *A.2d* 335 (1991), the Court held that this immunity barred a claim against a municipality and one of its housing inspectors for negligently mishandling a tenant's complaints relating to inoperative smoke detectors and a lack of heating. In response to a complaint by the tenant, the Fire Department conducted an inspection of her apartment and found that the smoke detectors were inoperable. The fire inspector issued a violation notice to the landlord, but it was never recorded and consequently the Fire Department did not require the landlord to correct the condition. In response to another complaint by the tenant, a housing inspector issued a violation notice to the landlord for failing to supply heat to the apartment. However, when the inspector returned the day before a scheduled hearing in municipal court, the apartment appeared vacant and the building manager told the inspector that the tenant had moved out. The inspector conveyed this information to the municipal court, which dismissed the complaint. Several months later, there was a fire in the apartment which resulted in the death of the tenant's four children. The tenant brought suit against not only the landlord but also the city and its housing inspector, alleging that the lack of heat and inoperative smoke detectors had contributed to the fire and resulting deaths. However, the Court concluded that both the mishandling of the violation notice of the inoperable smoke detector and the dismissal of the municipal court complaint relating to lack of heat constituted "failure[s] to enforce a law" for which the municipality and its inspector had absolute immunity:

The meaning encompassed by "failure to enforce a law" under *N.J.S.A.* 59:3–5 is not self-explanatory. The language itself reasonably suggests that the essential conduct constituting failure to enforce a law would consist of a failure to act, an omission, or non-action.

. . . .

[A]pplication of the absolute immunity under the Act is determined by whether the critical causative conduct by government employees consists of non-action or the failure to act with respect to the enforcement of the law. We conclude that the conduct of the municipal defendants in terminating the enforcement proceedings relating to the heating violation constitutes such non-action or failure to enforce the law and falls within the absolute immunity of section 3–5.

[*Id.* at 367, 373–74, 593 *A*.2d 335.]

It is even clearer in this case than in *Bombace* that the alleged negligence of the DCR and its employees consisted of a "failure to enforce [the] law" for which the Tort Claims Act provides absolute immunity. Although it was arguable in *Bombace*, as this court had held, that the housing inspector's representation to the municipal court that the tenant had moved out of the apartment was an affirmative negligent act, rather than simply a failure to enforce a law, *Bombace v. City of Newark*, 241 *N.J.Super.* 1, 6–8, 574 *A*.2d 49 (App.Div.1990), the alleged negligence in this case consists entirely of a failure to enforce the law, that is, dilatoriness in the investigation and evaluation of plaintiffs' complaints resulting ultimately in their dismissal. Plaintiffs' complaints were filed with the DCR in accordance with the Law Against Discrimination (LAD), which provides that "[a]ny person claiming to be aggrieved by an unlawful employment practice . . . may, personally or by an attorney-at-law, . . . file . . . a verified complaint [with the DCR]." *N.J.S.A.* 10:5–13. The LAD further provides that "[a]fter the filing of any complaint, [the DCR] shall cause [a] prompt investigation to be made," and if the DCR "shall determine after such investigation that probable cause exists for crediting the allegations of the complaint, [it] shall immediately endeavor to eliminate the unlawful employment practice." *N.J.S.A.* 10:5–14. The gravamen of plaintiffs' tort claim is that the DCR failed to discharge its responsibility under *N.J.S.A.* 10:5–

14 to conduct a "prompt investigation" of their complaints.[1] Such an allegation is similar to the claim in *Bombace* that the Fire Department negligently failed to record the notice of an inoperable smoke detector, as a result of which it failed to force the landlord to correct the condition. Therefore, the DCR and its employees are entitled to the same immunity from suit for the "[failure] to enforce [a] law" which the Court held to bar the tenant's action in *Bombace.*

This conclusion is reinforced by legislative policies reflected in other sections of the Tort Claims Act. *N.J.S.A.* 59:2–3(b) and *N.J.S.A.* 59:3–2(b) provide immunity to public entities or employees for "legislative ... action or inaction," and *N.J.S.A.* 59:2–3(d) and *N.J.S.A.* 59:3–2(d) provide immunity "for the exercise of discretion when, in the face of competing demands, [the entity or employee] determines whether and how to utilize or apply existing resources, including those allocated for ... personnel unless a court concludes that the determination ... was palpably unreasonable." An allegation that a government agency has failed to conduct a timely investigation of a complaint frequently implicates questions regarding the adequacy of legislative appropriations to the agency, which would fall within the immunity provided by *N.J.S.A.* 59:2–3(b) and *N.J.S.A.* 59:3–2(b). Such an allegation also may implicate the enforcement priorities established by the agency's supervisory staff, which would be covered by the qualified

---

[1] Plaintiff also seeks to impose liability upon defendants on the basis of what they characterize as "legal malpractice." However, the DCR does not enter into an attorney-client relationship with a complainant in performing its responsibility to investigate a complaint and determine whether there is probable cause to credit its allegations. Cf. *Frank v. Ivy Club,* 228 *N.J.Super.* 40, 56, 548 *A.2d* 1142 (App.Div.1988) (noting that the investigation mandated by *N.J.S.A.* 10:5–14 "is a culling-out process whereby ... the Division [makes] an initial determination of whether probable cause exists to believe a complainant has been discriminated against"), *rev'd on other grounds,* 120 *N.J.* 73, 576 *A.2d* 241 (1990), *cert. denied, Tiger Inn v. Frank,* 498 *U.S.* 1073, 111 *S.Ct.* 799, 112 *L.Ed.2d* 860 (1991). In any event, plaintiffs' claims are predicated solely on the DCR's alleged negligent delay in completing its investigation which, for the reasons stated in this opinion, is governed by the immunity provided by *N.J.S.A.* 59:2–4 and *N.J.S.A.* 59:3–5.

immunity provided by *N.J.S.A.* 59:2–3(d) and *N.J.S.A.* 59:3–2(d). Therefore, the Tort Claims Act's clearly expressed policy judgment that such legislative and executive decisions should not generally provide a basis for the imposition of tort liability provides further support for our conclusion that a government agency's delay in conducting an investigation constitutes "a [failure] to enforce [the law]" within the intent of *N.J.S.A.* 59:2–4 and *N.J.S.A.* 59:3–5.

▮ Finally, we note that the LAD affords a complainant before the DCR with a procedural avenue to pursue a discrimination complaint even though the DCR fails to properly discharge its investigatory responsibilities pursuant to *N.J.S.A.* 10:5–14. The LAD provides that "[a]t any time after 180 days from the filing of a complaint ..., a complainant may file a request with [the DCR] to present the action personally or through counsel to the [OAL]," and that this request must be honored unless the Director of the DCR "has found that no probable cause exists to credit the allegations of the complaint or has otherwise dismissed the complaint." *N.J.S.A.* 10:5–13. A complainant who feels that the DCR is not processing a complaint in an expeditious manner also has the option of withdrawing the complaint and filing suit in the Law Division. *Aldrich v. Manpower Temporary Servs.,* 277 *N.J.Super.* 500, 505, 650 *A.2d* 4 (App.Div.1994), *certif. denied,* 139 *N.J.* 442, 655 *A.2d* 445 (1995). Therefore, the eventual dismissal of plaintiffs' complaints was the result of not only the dilatoriness of the DCR's investigatory personnel but also plaintiffs' own decisions not to request the transmittal of their complaints to the OAL or to withdraw the complaints and file suit in the Law Division.

Accordingly, the order denying defendants' motion to dismiss is reversed.