244

702 A.2d 353

WILLIAM B. FRIELDS, ADMINISTRATOR FOR THE ESTATE OF WILLIAM T. FRIELDS, AND INDIVIDUALLY, PLAINTIFF–APPELLANT, v. ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER AND CITY OF PATERSON, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 22, 1997—Decided November 18, 1997.

Before Judges MUIR, Jr., CUFF and STEINBERG.

*Donald J. Maizys* argued the cause for appellant (*Karas, Kilstein, Hirschklau, Feitlin & Youngman,* attorneys; *Mr. Maizys* on the brief).

*John L. Shanahan* argued the cause for respondent St. Joseph's Hospital and Medical Center (*Hein, Smith, Berezin, Maloof, Davidson & Jacobs,* attorneys; *Mr. Shanahan,* of counsel and on the brief; *Douglas V. Sanchez* on the brief).

*Bruce A. Tritsch* argued the cause for respondent City of Paterson (*Feinberg and Tritsch,* attorneys; *Mr. Tritsch,* of counsel and on the brief).

The opinion of the court was delivered by

CUFF, J.A.D.

Plaintiff William B. Frields, Administrator of the Estate of William T. Frields, appeals from orders granting summary judgment in favor of defendants St. Joseph's Hospital (Hospital) and the City of Paterson (City). The motion judge ruled that the mobile intensive care unit personnel from the Hospital and the emergency medical technicians from the City who responded to plaintiff's call for assistance were immune from liability pursuant to statute. We affirm.

At approximately 7 p.m. on September 15, 1990, William T. Frields (Billy) arrived at his father's residence in Paterson. Soon thereafter, Billy reported to his father that he felt dizzy and collapsed on the kitchen floor. His father noticed that his son's breathing was irregular and instructed one of his daughters to call an ambulance. Mr. Frields attempted to assist his son's breathing and massaged his back until emergency personnel arrived.

A Mobile Intensive Care Unit (MICU) from the Hospital and an Emergency Medical Technician (EMT) team from the City arrived in response to Frield's call. The MICU team noted that Billy had vomited and was incontinent before their arrival. Believing that Billy exhibited signs of a drug overdose, the MICU personnel administered 2mg of Narcan to counteract the effect of any narcotic. Soon thereafter, Billy "woke up."

It is undisputed that when Billy became responsive he resisted mightily the efforts of the emergency personnel to subdue him and to transfer him to an ambulance. Several men, including a police officer on the scene, were required to restrain him. Once restrained, the emergency personnel were able to transport him to the ambulance. Billy arrived at the Hospital between 7:50 and 7:55 p.m. He died at 9:02 p.m. An autopsy revealed that he died from a subarachnoid hemorrhage.

Mr. Frields filed a wrongful death and survival action against the Hospital and the City based on the actions of the Hospital and City emergency personnel on September 15, 1990. He complained

that the emergency personnel used excessive force in their attempt to restrain his son. He also asserted that the actions by the Hospital and City personnel constituted negligent and intentional infliction of emotional distress. The motion judge dismissed the complaint on the ground that the emergency personnel were immune from liability pursuant to the terms of the Good Samaritan Act, *N.J.S.A.* 2A:62A–1.

Through several statutes, the Legislature has granted qualified immunity to a wide range of persons who provide medical assistance in emergency situations. Volunteers and paid professionals who respond to a medical emergency and render treatment are immunized pursuant to *N.J.S.A.* 2A:62A–1. This statute is commonly known as the Good Samaritan Act. It provides that any individual, including licensed health care professionals, or any member of a volunteer first aid or rescue squad who in good faith renders medical care at the scene of an accident or emergency to a victim is immune from damages in a civil action as a result of any act or omission by the person rendering the medical care.

*N.J.S.A.* 26:2K–14 provides a similar good faith immunity to mobile intensive care paramedics; *N.J.S.A.* 26:2K–29 provides a good faith immunity to EMT-intermediates. *N.J.S.A.* 26:2K–14 provides:

> No mobile intensive care paramedic, licensed physician, hospital or its board of trustees, officers and members of the medical staff, nurses or other employees of the hospital, first aid, ambulance or rescue squad, or officers and members of a rescue squad shall be liable for any civil damages as the result of an act or the omission of an act committed while in training for or in the rendering of advanced life support services in good faith and in accordance with this act.

*N.J.S.A.* 26:2K–29 provides:

> No EMT—intermediate, licensed physician, hospital or its board of trustees, officers and members of the medical staff, nurses or other employees of the hospital, or officers and members of a first aid, ambulance or rescue squad shall be liable for any civil damages as the result of an act or the omission of an act committed while in training for or in the rendering of intermediate life support services in good faith and in accordance with this act.

It is undisputed that the Hospital personnel were members of a mobile intensive care unit and that the City personnel qualify as

EMT-intermediates. Therefore, the inquiry is whether they acted in good faith.

"Good faith" has been defined as "honesty of purpose and integrity of conduct without knowledge, either actual or sufficient to demand inquiry, that the conduct is wrong." *Marley v. Borough of Palmyra*, 193 *N.J.Super.* 271, 294, 473 *A.*2d 554 (Law Div.1983). The issue of whether a person acted in good faith is often a question of fact which should be decided at a plenary hearing. *Fielder v. Stonack*, 141 *N.J.* 101, 132, 661 *A.*2d 231 (1995). Summary judgment, however, is appropriate when the employee demonstrates that his/her actions "were objectively reasonable or that [he] performed them with subjective good faith." *Canico v. Hurtado*, 144 *N.J.* 361, 365, 676 *A.*2d 1083 (1996). This test recognizes that even a person who acted negligently is entitled to a qualified immunity, if he acted in an objectively reasonable manner. *Id.* at 366, 676 *A.*2d 1083.

Applying these principles to the proofs offered by plaintiff and drawing all reasonable inferences in favor of plaintiff, we are satisfied that plaintiff presents proofs that the emergency personnel may have acted negligently; however, any negligence does not strip them of their immunity. Plaintiff contends that the emergency personnel used excessive force to restrain his son. He contends that his son could have been restrained sooner and with less force, if he had been sedated. His expert, Dr. Steven M. Lomazow, supports this claim citing the following acts and omissions of the emergency personnel:

In my opinion, the force used by the paramedics to restrain Mr. Frields was inappropriate. They should be entirely capable of dealing with combative or violent individuals from a pharmacological standpoint rather than using physical restraint. There was clearly enough manpower at the scene to administer a sedative such as Haldol or Valium in order to properly sedate the patient and get him under control. While they could not have proven the diagnosis at the scene, in my opinion, they went about it entirely incorrectly by exerting much too much physical force and not enough pharmacological intervention. This was undoubtedly at their disposal but not utilized.

Plaintiff's expert does no more than state a case for paramedic or emergency personnel negligence. Coupled with his

concession that the emergency personnel could not be expected to diagnose a subarachnoid hemorrhage in the field, plaintiff has failed to present any facts which create a genuine issue of material fact that defendants' employees did not act in an objectively reasonable manner. *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 544, 666 *A.*2d 146 (1995). Accordingly, the City personnel were immune pursuant to the immunity conferred by *N.J.S.A.* 26:2K-29, and the Hospital employees were immune pursuant to the terms of *N.J.S.A.* 26:2K-14[1] and summary judgment in favor of defendants was appropriate.

Affirmed.

---

[1] The City's reliance on the immunity conferred by *N.J.S.A.* 59:3-3 is misplaced. This statute confers an immunity on public employees for acts or omissions in the course of the enforcement of a statute, ordinance or regulation. *See Bombace v. City of Newark*, 125 *N.J.* 361, 593 *A.*2d 335 (1991) (municipal employees responsible for the enforcement of municipal building and fire codes immune from liability); *Reaves v. State of New Jersey*, 303 *N.J.Super.* 115, 696 *A.*2d 82 (App.Div.1997) (personnel of the Division on Civil Rights immune from liability for failing to promptly investigate discrimination claim). The City has cited no law which City personnel were administering or enforcing at the time of their response.