**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0530-19T2

ROSE BENGEL and HENRY F.
BENGEL,

     Plaintiffs-Appellants,

v.

HOLIDAY CITY AT BERKELEY
FIRST AID SQUAD INC.,
GEORGE PHILLIPS,
MARIELLA KOBUS, and
LORRAINE MORRONE,

     Defendants-Respondents,

and

BERKELEY TOWNSHIP,

     Defendants.

_____

Argued October 26, 2020 – Decided December 11, 2020

Before Judges Sabatino and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0192-18.

Fred J. Gelb argued the cause for appellants (Fred J. Gelb and Jeff Thakker, attorneys; Jeff Thakker, of counsel; Fred J. Gelb, on the briefs.)

Suzanne M. Marasco argued the cause for respondents (Hill Wallack LLP, attorneys; Suzanne M. Marasco, of counsel and on the brief, Michael K. Fortunato, on the brief).

PER CURIAM

Plaintiffs Rose and Henry Bengel appeal from the August 21, 2019 Law Division order granting summary judgment dismissal of their personal injury complaint against defendants Holiday City at Berkeley First Aid Squad, Inc., and three volunteer squad members, George Phillips, Mariella Kobus, and Lorraine Morrone, all first responders.[1] The motion judge ruled that defendants, who responded to plaintiffs' call for medical assistance, were immune from liability pursuant to statute. Having considered the arguments and applicable law in light of the record, we affirm.

The action stemmed from injuries allegedly sustained when Phillips, Kobus, and Morrone responded to the Bengel's home on a 9-1-1 call for medical

---

[1] The Township of Berkeley was also named as a defendant in the complaint. However, on March 1, 2019, the Township was granted summary judgment dismissal, and that dismissal is not challenged in this appeal.

A-0530-19T2

assistance and transported Rose,[2] then eighty-five-years-old, to the hospital. The relevant facts, viewed in the light most favorable to plaintiffs, as the summary judgment standard requires, Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)), reveal that on February 1, 2016, when Phillips, Kobus, and Morrone arrived at the Bengel home, they were advised by a home health aide that Rose had "pink eye, thrush, and was wheezing" since recently arriving home from a nursing home. At the time, Rose was non-ambulatory and confined to a wheelchair, having suffered from muscular dystrophy for decades.

After assessing Rose's medical condition, the first responders began to transfer Rose from her motorized wheelchair to a stretcher in order to transport her to the hospital. To that end, Phillips went behind Rose to lift her onto the stretcher, while Kobus picked up Rose's feet. Together, the two lifted Rose and placed her on the stretcher in a seated position. While on the stretcher, Kobus took Rose's vitals, which included an assessment of her oxygen level, pulse, and blood pressure. Thereafter, the first responders transported Rose via ambulance to the emergency room at Community Medical Center in Toms River.

---

[2] We refer to the Bengels by their first names to avoid any confusion caused by their common surname and intend no disrespect.

On January 26, 2018, plaintiffs filed a six-count complaint alleging negligence and carelessness on the part of defendants by failing "to use reasonable care to lift, remove[,] and transport . . . Rose . . . to the hospital." Specifically, according to the complaint, "by . . . lifting [Rose] up from under her arms instead of lifting her in her harness" when they transferred Rose from "her wheel chair onto [the] gurney[,]" the first responders inflicted permanent injuries on Rose. In their interrogatory answers, plaintiffs described the injuries as a "[t]orn rotator cuff" in the "left arm."

During his deposition, Henry Bengel, Jr., Rose's son, testified that he was at his parents' home when the first responders arrived. He specified that it was a nurse, rather than an aide, who had called for an ambulance, but he did not know the nurse's name and could not identify her. Henry also stated that because of his mother's resistance to going to the hospital, the nurse went outside to make the call. However, he believed the nurse had already left the residence when the ambulance arrived. As a result, he, rather than the nurse, interacted with the first responders upon their arrival.

Henry further testified that when the first responders transferred Rose to the stretcher, Phillips lifted Rose "under her arms from the back of the [wheelchair,]" while Kobus "had [her] hands around [Rose's] [lower] legs."

4

Henry stated as Phillips and Kobus simultaneously lifted Rose, Rose "let out a loud scream," prompting Henry to tell the first responders, "[y]ou're hurting her." After Rose was placed on the stretcher, she told Henry the first responders had hurt "her left arm." Henry stated none of the first responders expressed any emotion after his mother screamed and failed to mention the injury to the emergency room personnel. Henry testified that after his mother was admitted to the hospital, he, in fact, informed "the emergency room [personnel] to check [Rose's] shoulder because she was injured coming in with the [first responders]."

During his deposition, Henry was specifically questioned about the "call sheet" completed by the first responders on February 1, 2016 and provided to the hospital when they delivered Rose to the emergency room. The call sheet recorded the information pertinent to the encounter, including the patient's medical condition. In the section entitled "Assessment/Treatment & Procedures," the call sheet stated: "Son states: Home health aid[e] stated patient has pink eye, thrush, wheezing since coming hom[e] yesterday from [r]ehab. Pain in left arm. Benicar only med this morning. Discharged yesterday from nursing home since Dec 15." Henry was adamant that prior to the injury inflicted by the first responders, Rose "had no pain in her left arm" and denied telling the first responders otherwise.

5

After subsequent diagnostic testing revealed "an acute rotator cuff tear" in the left shoulder, Rose's doctor told Henry that although "the muscle was ripped from the bone," he did not "recommend surgery . . . because of [Rose's] age and . . . sugar levels."  As a result, Rose was treated with physical therapy and pain medications.  Henry testified his mother was unable to use her "[l]eft hand and . . . arm" after being injured on February 1st.  According to Henry, although Rose's use of her left hand and arm were limited prior to the injury, the limitations became worse after the incident.[3]  Rose confirmed during her deposition that the first responder "hurt [her] . . . [left] arm" when "he pick[ed her] up," and that she was able to use her left arm before the injury.[4]

Kobus, Phillips, and Morrone provided a different account from Henry during their respective depositions.  According to Kobus and Phillips, when they transferred Rose from her wheelchair to the stretcher, Phillips "wrapped his arms around [Rose's] abdomen" while Kobus "took her feet."  Together, they "gently lifted" Rose and "sat her on the stretcher."  Neither Kobus nor Phillips heard Rose scream.  Further, both Kobus and Phillips testified that when they arrived

---

[3]  Henry was also interviewed by an insurance company representative on May 13, 2016, during which he provided answers that were generally consistent with his deposition testimony.

[4]  Rose passed away on May 7, 2019, from unrelated causes.

at the residence, the aide was beside Rose and provided them with all the information about Rose's condition. Morrone recorded the information provided by the aide in the call sheet that was turned over to the hospital when they arrived at the emergency room. The first responders also testified that although the 9-1-1 dispatch for Rose's call reported an "[e]lderly female with general weakness[,]" all calls were considered emergencies.

Plaintiffs provided an expert report prepared by W. Francis Kennard, M.D. Based on his review of Rose's medical records as well as the depositions taken in the case,[5] Dr. Kennard opined that the "[c]ause" of Rose's shoulder injury was "traumatic injury such as lifting superimposed upon chronic tendinosis/tendinitis of the rotator cuff." Plaintiffs also supplied an expert report prepared by Michael Ryan, an experienced critical care emergency medical technician (EMT) and certified instructor coordinator for the New York Department of Health, Bureau of Emergency Medical Services.

Based on his review of the depositions, Ryan opined:

> The Holiday City at Berkley First Aid Squad is not properly trained to handle [9-1-1] emergencies. Basic EMT training, a minimum standard in pre-hospital care, far exceeds what these Squad members were provided. The victim was not thoroughly assessed prior to

---

[5] Rose's husband was also deposed. However, the record on appeal does not contain a copy of his deposition.

A-0530-19T2

transfer and as a result suffered an injury while being moved to the ambulance stretcher. This was an act of negligence by the Squad members based on my experience as a technician and an instructor.

Defendants moved for summary judgment on the ground that they had statutory immunity against claims of negligence. During oral argument conducted on August 16, 2019, plaintiffs' counsel asserted that statutory immunity did not apply because "[i]t was [not] an emergent situation." According to counsel, although defendants went to the Bengel residence with "lights" and "sirens on[,]" when they left the house, there were "no sirens" and "no lights . . . . because it wasn't an emergency." Counsel also argued that "[i]n order for immunity to apply, defendants must demonstrate that the care they provided was rendered in good faith[,]" but there were "some serious issues" as to whether "the care [defendants] provided [was] rendered in good faith."

In an August 21, 2019 order, the judge granted defendants' motion and dismissed the complaint with prejudice. In an accompanying written decision, the judge first noted that "Holiday City at Berkeley First Aid Squad Inc. is one of the four volunteer first aid squads in Berkeley Township," and Phillips, Kobus, and Morrone "were members of the First Aid Squad and certified to provide Basic Life Support services as first responders." Applying N.J.S.A. 2A:53A-13, N.J.S.A. 2A:53A-13.1, and N.J.S.A. 26:2K-29, immunizing

8

volunteer rescue squads and members from civil liability when providing emergency public first aid or intermediate life support services in good faith, the judge determined that defendants were entitled to immunity as a matter of law and there were no genuine issues of material fact that dictated otherwise.

The judge explained:

> Here, [p]laintiffs allege that an injury occurred while two of the rescue squad members lifted . . . Rose Bengel from her motorized wheelchair onto a stretcher. At the time of the alleged injury, the First Aid Squad [d]efendants were engaged in public first aid rescue services as they were specifically responding to a 9-1-1 medical emergency call. Plaintiffs' contention that [Rose's] condition may not have been life threatening does not make the call that the First Aid Squad [d]efendants were responding to non-emergent.

In support, the judge stated that "[a]ll [9-1-1] calls to which the First Aid Squad responds are considered a medical emergency and are treated as such."

The judge acknowledged that under the statutes, "if a volunteer first aid squad member were to engage in intentional misconduct while providing public first aid services, the individual would not be entitled to immunity per the statutes." However, according to the judge, "no evidence has been set forth demonstrating that any such alleged injury was caused with intent or with bad faith[,]" and "[t]he opinion of [p]laintiff[s'] expert that . . . defendant volunteer

first aid squad and members were 'negligent' does not change the outcome." This appeal followed.

We review "a grant of summary judgment de novo" Sashihara v. Nobel Learning Communities, Inc., 461 N.J. Super. 195, 205 (App. Div. 2019), and apply "the same standard governing the trial court." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citations omitted) (quoting R. 4:46-2(c)).]

At the summary judgment stage, the opposing party must produce evidence that creates a genuine issue of material fact, and "conclusory and self-serving assertions . . . are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005). "If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill, 142 N.J. at 540. Further, if "the evidence is utterly one-sided[,]"

10

a trial court has the authority to "decide that a party should prevail as a matter of law." Gilhooley v. Cnty. of Union, 164 N.J. 533, 545 (2000) (citing Brill, 142 N.J. at 540).

In our review, if there is no genuine issue of material fact, we must "decide whether the trial court correctly interpreted the law." DepoLink Ct. Rep. & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review "issues of law de novo and accord no deference to the trial judge's legal conclusions." Vizzoni v. B.M.D., 459 N.J. Super. 554, 567 (App. Div. 2019) (citing Nicholas v. Mynster, 213 N.J. 463, 478 (2013)).

With these principles in mind, we begin by examining the language of the immunity statutes at issue. "Through several statutes, the Legislature has granted qualified immunity to a wide range of persons who provide medical assistance in emergency situations." Frields v. St. Joseph's Hosp. & Med. Ctr., 305 N.J. Super. 244, 247 (App. Div. 1997). Pertinent to this appeal, volunteer rescue squad members are immunized from civil liability under N.J.S.A. 2A:53A-13, which provides:

> No member of a volunteer fire company, which provides emergency public first aid and rescue services or services for the control and extinguishment of fires, or both, and no authorized active volunteer first aid or rescue squad worker who is not a member of the volunteer fire company within which the first aid or

rescue squad may have been created, doing public first aid or rescue duty, shall be liable in any civil action to respond in damages as a result of his acts of commission or omission arising out of and in the course of his rendering in good faith any such services, or arising out of and in the course of participation in any authorized drill, but such immunity from liability shall not extend to the operation of any motor vehicle in connection with the rendering of any such services.

Nothing herein shall be deemed to grant any such immunity to any person causing damage by his willful or wanton act of commission or omission.

As entities, volunteer rescue squads enjoy similar immunity under the companion statute, N.J.S.A. 2A:53A-13.1, which provides:

No volunteer fire company or volunteer first aid, rescue or emergency squad, civil defense unit, incorporated or unincorporated, which provides services for the control and extinguishment of fires or emergency public first aid and rescue services, or both, shall be liable in any civil action to respond in damages as a result of any acts of commission or omission arising out of and in the course of the rendition in good faith of any such services, or arising out of and in the course of participation in any authorized drill, by any member of the volunteer fire company or the volunteer first aid, rescue or emergency squad, or civil defense unit, and in the case of a volunteer fire company within which a first aid or rescue squad has been created, by any authorized active volunteer first aid or rescue squad worker therefor, notwithstanding that he is not a member of the volunteer fire company. No such immunity from liability shall extend to the operation of any motor vehicle in connection with the rendering of any such services.

A-0530-19T2

Individual volunteer first aid squad members also have a separate and independent basis for immunity under N.J.S.A. 26:2K-29, which provides:

> No EMT-intermediate, licensed physician, hospital or its board of trustees, officers and members of the medical staff, nurses or other employees of the hospital, or officers and members of a first aid, ambulance or rescue squad shall be liable for any civil damages as the result of an act or the omission of an act committed while in training for or in the rendering of intermediate life support services in good faith and in accordance with this act.

N.J.S.A. 26:2K-29 immunizes for negligence medical personnel who "act in an objectively reasonable manner[,]" Frields, 305 N.J. Super. at 249, in actually rendering life support services. De Tarquino v. City of Jersey City, 352 N.J. Super. 450, 456 (App. Div. 2002). N.J.S.A. 26:2K-21(i) defines "intermediate life support services" as "an intermediate level of pre-hospital, inter-hospital, and emergency service care which includes basic life support functions . . . and other techniques and procedures authorized by the commissioner[.]" N.J.S.A. 26:2K-21(b) defines "[b]asic life support" which are included in "[i]ntermediate life support services," as "a basic level of pre-hospital care which includes patient stabilization . . . and other techniques and procedures authorized by the commissioner." N.J.A.C. 8:40A-10.1(b) delineates the "scope of practice for an EMT-Basic[,]" approved by the

Commissioner of Health, and lists "[p]atient assessment, including vital signs and ongoing evaluation[,]" and "[p]atient lifting and moving techniques[,]" among the authorized techniques and procedures. N.J.A.C. 8:40A-10.1(b)(1) and (10).

Here, it is undisputed that defendants, a volunteer first aid squad and its members, qualify for immunity under the statutes. Therefore, the dispositive inquiry is whether they acted in good faith. Indeed, "[t]he immunities granted . . . under N.J.S.A. 2A:53A-13 and -13.1 are broader in scope than those generally provided under the Tort Claims Act because a plaintiff must demonstrate an absence of good faith or intentional conduct." Lauder v. Teaneck Volunteer Ambulance Corps., 368 N.J. Super. 320, 327 (App. Div. 2004).

Good faith is not defined in any of the immunity statutes. However, "'[g]ood faith' has been defined as 'honesty of purpose and integrity of conduct without knowledge, either actual or sufficient to demand inquiry, that the conduct is wrong.'" Frields, 305 N.J. Super. at 248 (quoting Marley v. Borough of Palmyra, 193 N.J. Super. 271, 294 (Law Div.1983)). In Frields, we explained that:

> The issue of whether a person acted in good faith is often a question of fact which should be decided at a

A-0530-19T2

plenary hearing. Summary judgment, however, is appropriate when the employee demonstrates that his/her actions "were objectively reasonable or that [he] performed them with subjective good faith." This test recognizes that even a person who acted negligently is entitled to a qualified immunity, if he acted in an objectively reasonable manner.

[Ibid. (citation omitted) (quoting Canico v. Hurtado, 144 N.J. 361, 365 (1996)).]

N.J.S.A. 2A:53A-13 contains an additional "disclaimer for 'willful or wanton' actions" that does not appear in N.J.S.A. 2A:53A-13.1. Stollenwerk v. Twp. of Mullica, 316 N.J. Super. 379, 381 (App. Div. 1998).

To establish a willful or wanton injury it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result.

Those conditions must be demonstrated; they cannot merely be alleged:

Willfulness and wantonness are conclusions to be drawn from a given set of facts and circumstances. When in the light of common experience and judicial precedents the facts and circumstances alleged clearly do not constitute such conduct, the mere fact that plaintiffs

15

characterize them as willful or wanton is not sufficient to create a triable issue.

[Id. at 382 (quoting Egan v. Erie R.R. Co., 29 N.J. 243, 254-255 (1959)).]

"To warrant that characterization, the act or the omission to discharge a duty must be intentional, and coupled with a consciousness, actual or imputed, of a high degree of probability that harm . . . will ensue." Id. at 383 (quoting Krauth v. Israel Geller, 31 N.J. 270, 277 (1960)).

Applying these principles to plaintiffs' proofs, including plaintiffs' expert opinions that defendant squad members were negligent in lifting Rose and the lifting caused Rose's shoulder injury, and drawing all reasonable inferences in plaintiffs' favor, we are satisfied that plaintiffs' proofs "do[] not strip [defendants] of their immunity." Frields, 305 N.J. Super. at 248.

On appeal, plaintiffs appear to have abandoned their prior claim that defendants were not responding to a medical emergency to qualify for immunity. Referring to the contact sheet prepared and submitted by the first responders when they delivered Rose to the emergency room, plaintiffs now allege for the first time on appeal that defendants' "attempt[] to cover . . . up" their negligence by "fabricat[ing] a report of a prior nursing home arm injury" "transcends bad faith and enters the realm of willful misconduct."

16

Even assuming that plaintiffs' newly minted allegation of bad faith was properly before us, the claim has no merit. Nothing in these circumstances justifies such a characterization of defendants' actions. Plaintiffs' assertion that defendants' paperwork containing a conflicting account of what occurred at the Bengel home bespeaks falsification and, in turn, the absence of good faith in providing first aid to Rose, constitutes rank speculation. "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome [a summary judgment] motion." Sullivan v. Port Auth. of N.Y. & N.J., 449 N.J. Super. 276, 283 (App. Div. 2017) (first alteration in original) (quoting Puder, 183 N.J. at 440-41 (2005)). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)).

There is nothing in the statute or case law to indicate that poor recordkeeping strips a first responder of immunity. The "good faith" element in the statutes concerns the treatment provided at the scene, not how well records are prepared after the fact. See De Tarquino v. City of Jersey City, 352 N.J. Super. 450, 456 (App. Div. 2002) (holding that the immunity provided under

17

N.J.S.A. 26:2K-29 "for 'the rendering of intermediate life support services'" does not "include immunity for negligence in the preparation of a report regarding those services" (quoting N.J.S.A. 26:2K-29)). Because plaintiffs failed to present competent evidential material which creates a genuine issue of material fact regarding the absence of good faith on the part of defendants in providing first aid to Rose, summary judgment in favor of defendants based on statutory immunity was appropriate.

Plaintiffs also challenge certain procedural aspects of the adjudication of the summary judgment motion, arguing that the judge abused his discretion by failing to grant "a one-cycle adjournment" so that counsel could "sufficiently recover" from an unspecified "illness." We recount the timeline of events for context. On July 10, 2019, following the June 12, 2019 discovery end date, plaintiffs moved to extend discovery.[6] On July 19, 2019, defendants filed a motion for summary judgment. On July 31, 2019, while defendants' summary judgment motion was still pending, the judge entered an order granting plaintiffs' motion, extending discovery until August 11, 2019, and rescheduling the arbitration date to August 22, 2019. The July 31 order noted that the

---

[6] Plaintiffs had previously been granted an extension of discovery from March 14 to June 12, 2019, by order dated March 15, 2019.

extension was granted based on "exceptional circumstances" demonstrated by plaintiffs' counsel in a certification averring that his failure to supply expert reports and depose the previously unidentified nurse was due in part to his mother's passing on July 7, 2019, after a four-month illness.

Prior to the August 16, 2019 return date for defendants' summary judgment motion, in an August 8, 2019 letter to the court, plaintiffs' counsel "request[ed]" that defendants' "[m]otion for [s]ummary [j]udgment be dismissed as . . . premature" because he had just served expert reports on defendants and completed the deposition of the nurse. Counsel also indicated that he had "contacted [his] adversary . . . requesting a two[-]week adjournment . . . as [he had] been ill since July 21, 2019[,]" but his adversary "could not consent as she had to hear back from her client." Counsel therefore requested the court to dismiss the summary judgment motion as premature "or in the alternative" "adjourn" the motion "to August 30, 2019." The judge did not acquiesce to either of counsel's requests.[7]

Trial courts have considerable discretion when ruling on adjournment applications. Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 575 (2003).

---

[7] The record on appeal does not contain a copy of the order denying plaintiffs' request for an adjournment.

> [T]here are two conditions which must exist to warrant an appellate court in nullifying a ruling of the trial court made in the exercise of a conceded discretion. The first is that the judicial action must have been clearly unreasonable in the light of the accompanying and surrounding circumstances, and the second condition is that the ruling must have resulted prejudicially to the rights of the party complaining.
>
> [Smith v. Smith, 17 N.J. Super. 128, 132-33 (App. Div. 1951).]

"Essentially it is the manifest denial of justice to a party that constitutes an abuse of discretion." Id. at 133. See also State v. Miller, 216 N.J. 40, 47 (2013) ("[A] trial court's abuse of discretion in denying an adjournment request does not require reversal absent a showing of prejudice."). Here, considering the manner and surrounding circumstances under which the request was made, we discern no abuse of discretion in the denial of the adjournment, particularly since plaintiffs have not shown how they were prejudiced.

Plaintiffs further contend that because neither party strictly complied with the procedural requirements of Rule 4:46-2(a) and (b), the judge viewed the evidence in the light most favorable to defendants, contrary to the Brill standard. In support, plaintiffs point to the judge's recitation of the factual background, wherein the judge accepted defendants' version of the facts notwithstanding plaintiffs' conflicting account.

Under Rule 4:46-2(a), . . . a party moving for summary judgment is required to submit a "statement of material facts," which must "set forth in separately numbered paragraphs a concise statement of each material fact as to which the movant contends there is no genuine issue together with a citation to the portion of the motion record establishing the fact or demonstrating that it is uncontroverted." Rule 4:46-2(b) requires a party opposing a motion for summary judgment to "file a responding statement either admitting or disputing each of the facts in the movant's statement." Rule 4:46-2(b) provides that "all material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact." These requirements for the filing of statements of material facts by parties to a motion for summary judgment are designed to "focus . . . attention on the areas of actual dispute" and "facilitate the court's review" of the motion. Pressler [& Verniero], [Current N.J. Court Rules, cmt. 1.1 on R. 4:46-2 (2003)].

[Claypotch v. Heller, Inc., 360 N.J. Super. 472, 488 (App. Div. 2003).]

Here, defendants filed a statement of material facts to support their summary judgment motion as required by Rule 4:46-2(a). In opposition, plaintiffs filed a non-compliant responding statement, which permitted defendants' facts to be deemed admitted for purposes of the motion under Rule 4:46-2(b). We acknowledge that in his factual findings, the judge omitted facts that were in dispute. Notably, contrary to plaintiffs' account, the judge found

that in transferring Rose from her wheelchair to the stretcher, "Phillips . . . wrapped his arms around [Rose's] mid-section" and Kobus and Phillips "gently placed [Rose] on the stretcher." However, in adjudicating the motion, the judge also accepted plaintiffs' expert opinion that defendants were negligent in transferring Rose to the stretcher. In any event, plaintiffs have once again failed to demonstrate prejudice given our de novo review of the judge's decision and our determination that the disputed facts were not material to defendants' entitlement to statutory immunity as a matter of law. The immunity simply cannot be surmounted where, as here, defendants' conduct was at worst merely negligent.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0530-19T2