**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0508-22

ROBIN NEWSOME,

    Plaintiff-Appellant,

v.

INSPIRA HEALTH NETWORK,
INC.,[1]

    Defendant-Respondent,

and

GLOUCESTER COUNTY
EMERGENCY MEDICAL
SERVICE,

    Defendant.

_____

Submitted March 5, 2024 – Decided April 24, 2024

Before Judges Natali and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1462-19.

---

[1] Improperly plead as Inspira Health Network.

Jarve Granato Starr, LLC, attorneys for appellant (Adam M. Starr and Michael D. O'Leary, on the briefs).

Parker McCay, PA, attorneys for respondent (Marykay Wysocki, of counsel and on the brief).

PER CURIAM

Plaintiff Robin Newsome appeals from the trial court's September 23, 2022 order granting summary judgment to defendant, Inspira Health Network, Inc., and dismissing her complaint with prejudice. Because we agree with the trial court's determination defendant was entitled to immunity, we affirm.

Plaintiff's complaint alleged defendant's employees were negligent in their provision of care during emergency response. The following facts were adduced during discovery. Plaintiff has diabetes and, in the few years prior to the incident at issue here, had multiple episodes of hypoglycemia (low blood sugar). On January 1, 2018, plaintiff's family found her unresponsive and called 9-1-1. Defendant's employees, paramedics Christopher Taylor and James Thompson, responded to the call and found plaintiff unconscious and unresponsive.

Taylor was the "primary caregiver," responsible for obtaining information from the patient, family and any other paramedic on the scene, completing the patient record, and providing additional care if needed. Thompson was the

"other caregiver," responsible for administering care to the patient. Plaintiff's family members told Thompson and Taylor that they measured her blood sugar multiple times on a home glucose meter, and it consistently read "Lo," indicating a critically low blood sugar level.[2]

Taylor testified to three methods of treating a hypoglycemic patient. The patient can be given sugar, which was not possible here because plaintiff was unconscious. A paramedic can also administer glucagon to the patient, either intramuscularly or intranasally, which required a paramedic to call medical command for approval.

After assessing plaintiff's situation, Thompson opted to initiate an intravenous (IV) line to administer dextrose, also known as D50. Thompson described administering the dextrose in a carefully controlled manner, where he observed the IV site to ensure there were no problems with it. After Thompson started the IV line, he administered half the dextrose dose, but plaintiff's skin was diaphoretic, meaning sweaty, so the IV adhesive did not stick to her skin and the IV line came out of her arm. Three minutes later, Thompson removed

---

[2] According to defendant's expert, a normal blood sugar reading is between 80 and 120. Home glucose meters read "Lo" when glucose is less than 20 millimoles per liter (mmol/L), but sugar readings of less than 70 mmol/L are a medical emergency when the patient's consciousness is altered, as plaintiff's was.

the IV line but could not find another suitable vein, so he and Taylor decided to move plaintiff to the ambulance and transport her to the hospital. On the way, Taylor obtained approval to administer glucagon, which he administered intranasally. Plaintiff's blood sugar level registered twenty-one but she was still unconscious, so Taylor administered a second dose intramuscularly.

Once at the hospital and conscious, plaintiff began to complain of pain in her left arm where Thompson had administered the IV. She required emergency surgery to fix the compartment syndrome in her arm, which she alleged was caused by the dextrose.

Plaintiff's husband testified he told "every single human being that was in that bedroom surrounding [his] wife" that she was allergic to dextrose, but Taylor's notation in the record indicated he had confirmed plaintiff had no known drug allergies. Taylor did not recall confirming plaintiff's allergies but stated it was common practice to confirm allergies before administering any medication. Thompson also did not recall having any conversations with Taylor or plaintiff's family members on the scene because he was responsible for plaintiff's care and was focused on the IV. While they were on the scene, the paramedics did not have access to plaintiff's Inspira medical records.

4

Plaintiff's expert, Dr. Michael T. McEvoy, concluded defendant's employees were negligent in plaintiff's care, but also opined that plaintiff was not allergic to dextrose because it is a carbohydrate found in every human being, which made an allergy highly unlikely. Dr. McEvoy also testified he thought the paramedics acted in good faith and "reasonabl[y]."

Defendant's expert, Dr. Rich Maenza, concluded Thompson and Taylor "comported entirely with the standard of care" when treating plaintiff because her life-threatening hypoglycemic condition required the use of dextrose rather than glucagon. Dr. Maenza opined dextrose was "the most appropriate therapy for patients with life-threatening hypoglycemia such as those with [an] altered level of consciousness," in part because glucagon "works relatively slowly in the context of life-threatening hypoglycemia."

Dr. Maenza also noted Thompson had responded to a prior call for plaintiff's hypoglycemia in July 2014, during which plaintiff's husband informed Thompson of her adverse reaction to dextrose, and he administered glucagon instead. Dr. Maenza pointed out plaintiff had been given dextrose without any adverse reaction in October 2014, September 2015 and December 2016. Dr. Maenza found the "standard of care [did] not require knowledge of, or utilization of, any prior documentation in the management of a patient in the field with an

5

acute medical crisis," nor did it require Thompson to recall patient details from an encounter four years prior.

The trial court granted defendant's motion for summary judgment and dismissed plaintiff's complaint, finding defendant had good faith immunity from suit. The court determined defendant's employees acted in good faith by administering dextrose because it was an objectively reasonable treatment option in light of the emergency circumstances. The court further found the alleged negligent communication about plaintiff's purported allergy was "part and parcel" of providing intermediate and advanced life support services; therefore, defendant was entitled to qualified immunity pursuant to N.J.S.A. 26:2K-14.

Plaintiff appeals, raising the following issues for our consideration:

> POINT I
>
> RESPONDENT DID NOT ACT IN "GOOD FAITH" AND THEREFORE THE TRIAL COURT ERRED IN FINDING THAT THE IMMUNITIES OF N.J.S.A. 26:2K-14 WERE APPLICABLE.
>
> POINT II
>
> THE HARM TO RESPONDENT OCCURRED PRIOR TO RESPONDENT RENDERING "ADVANCED LIFE SUPPORT" SERVICES, AND THEREFORE THE IMMUNITIES OF N.J.S.A. 26:2K-14 ARE NOT APPLICABLE.

6

We review a trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Rule 4:46-2(c) provides that a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

The Legislature has afforded immunity to certain emergency medical providers:

> No . . . mobile intensive care paramedic, . . . first aid, ambulance or rescue squad, . . . or officers and members of a . . . rescue squad shall be liable for any civil damages as the result of an act or the omission of an act committed while in training for or in the rendering of . . . advanced life support services in good faith and in accordance with this act.
>
> [N.J.S.A. 26:2K-14.]

A-0508-22

Advanced life support services are

> an advanced level of pre-hospital, inter-facility or emergency medical care that includes basic life support functions, cardiac monitoring, cardiac defibrillation, telemetered electrocardiography, administration of anti-arrhythmic agents, intravenous therapy, administration of specific medications, drugs and solutions, utilization of adjunctive ventilation devices, trauma care and other techniques and procedures authorized in writing by the Commission[.]
>
> [N.J.S.A. 26:2K-7(a) (Jan. 2022)[3].]

There is no dispute defendant's employees are paramedics covered in N.J.S.A. 26:2K-14, and IV therapy is an advanced life support service. The question is whether the paramedics' actions or inactions complained of are considered advanced life support services and, if so, whether they were acting in good faith.

Here, plaintiff claims that the alleged negligence occurred before the paramedics began rendering advanced life support services, and therefore defendant is not entitled to immunity. Defendant counters that the paramedics' collection of patient allergy information is "part and parcel" of rendering medical care and therefore the immunity applies.

---

[3] Although the Legislature amended the definition of advanced life support services in 2022, see L. 2022, c. 118 (Oct. 2022), we consider the definition in effect at the time of the incident.

In support of her argument, plaintiff cites <u>De Tarquino v. City of Jersey City</u>, 352 N.J. Super. 450 (App. Div. 2002). In that case, a patient died of a hematoma after being discharged from the emergency room. <u>Id.</u> at 453. The ensuing complaint alleged the ambulance service was negligent for failing to note on the run sheet[4] that the patient had vomited while being treated. <u>Id.</u> at 452. We determined that completing a run sheet was not in the scope of intermediate life support services because it did not require the same level of skill as administering medical care, was not related to the paramedics' treatment plan, and was intended for the hospital staff's use in administering care. <u>Ibid.</u> Because the statute was not intended to give such broad protection to medical professionals, we held the paramedics were not entitled to immunity for negligence in completing a run sheet. <u>Id.</u> at 456.

Here, the paramedics testified that the first step in rendering medical services was to obtain patient information before administering medications on the scene. Unlike <u>De Tarquino</u>, where the negligence occurred in preparing a report for continued care, here the alleged miscommunication and resulting administration of dextrose occurred during the course of treatment on the scene.

---

[4] A run sheet "is a report of observations and treatment of an emergency patient, to the emergency room staff." <u>Id.</u> at 452.

Therefore, we agree with the trial court's determination the initial communication, or miscommunication, was in the scope of rendering life support services, and thus conduct the Legislature intended to afford the shield of immunity.

The paramedics' conduct must then be measured against the good faith standard, not negligence. Generally, "good faith" exists where there is "honesty of purpose and integrity of conduct without knowledge, either actual or sufficient to demand inquiry, that the conduct is wrong." Frields v. St. Joseph's Hosp., 305 N.J. Super. 244, 248 (App. Div. 1997) (quoting Marley v. Borough of Palmyra, 193 N.J. Super. 271, 294 (Law Div. 1983)). While the issue of good faith is often determined in a plenary hearing, summary judgment is proper where the defendant demonstrates that the actions "were objectively reasonable or that they performed them with subjective good faith." Canico v. Hurtado, 144 N.J. 361, 365 (1996). "This test recognizes that even a person who acted negligently is entitled to a qualified immunity, if he acted in an objectively reasonable manner." Frields, 305 N.J. Super. at 248 (citing id. at 366).

In Frields, the plaintiff claimed that paramedics used excessive force when putting his son on an ambulance, which caused a brain hemorrhage that resulted in his death. Ibid. The plaintiff argued the paramedics should have administered

a chemical sedative rather than use physical restraint. Ibid. We held that, while the plaintiff proffered evidence of a possible negligence claim against the paramedics, he failed to present any evidence that created a genuine issue of fact that defendants' employees did not act in an objectively reasonable manner. Id. at 249. Because the paramedics acted in good faith, they were entitled to immunity under N.J.S.A. 26:2K-14. Ibid.

As in Frields, the paramedics' alleged negligence will not vitiate qualified immunity under N.J.S.A. 26:2K-14, as long as they acted in good faith. Under the circumstances of plaintiff's medical emergency, we are convinced it was objectively reasonable for Thompson to treat her with dextrose instead of glucagon, which would have taken additional time to obtain approval and for the drug to take effect. Given the fact that plaintiff was unconscious and her blood sugar was dangerously low, she presented the paramedics with a medical emergency requiring immediate intervention. After administering only half a dose, Thompson quickly discontinued the dextrose when he observed plaintiff's sweaty skin and instead decided to transport plaintiff to the hospital. The gravity and urgency of the situation was borne out by the record, as the time from the paramedics' arrival to the time they administered the intranasal glucagon en

route to the hospital was only nineteen minutes. We also note plaintiff's own expert found the paramedics acted in good faith.

Even if plaintiff could establish a claim of negligence, that is not the standard here. Considering all the facts taken together, we are persuaded defendant's employees acted in good faith in treating plaintiff and defendant is therefore entitled to immunity.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12